## POWELL, EXTRADITION OF, In Re

Ohio Common Pleas, Trumbull Co

Decided Nov 16, 1937

George Buchwalter, Warren, and Wm. M. Howard, Youngstown, for plaintiff.

Wm. M. McLain, Warren, for sheriff.

## OPINION

By GRIFFITH, J.

This is an action in habeas corpus.

The applicant, Jordan Powell, seeks to obtain his release from sheriff Roy S. Hardman, of this county.

The governor of Georgia made requisition on the governor of Ohio for the prisoner as a fugitive from justice.

The governor of Ohio thereupon issued his warrant to the sheriff of this county.

The prisoner was arrested and brought before me, as one of the judges of this court, to be dealt with according to law.

On the 12th day of November, after a partial hearing, the inquiry was continued to Monday, November 15th; and on its final submission is now to be determined.

The sole question for this court to determine is, whether the governor of Ohio was authorized to issue a warrant for the arrest and extradition of Jordan Powell upon the request of the governor of Georgia.

This is a proceeding to inquire into the legality of the warrant, to determine the question of whether or not Jordan Powell is illegally restrained of his liberty. Various defects are now claimed in the extradition official documents. The prisoner claims there is no legal authentication of the affidavit of James Day, charging the crime of assault with intent to murder, by the governor of Georgia, as required by §109-3 GC, of our new uniform criminal extradition act, which, among other things, provides:

"The indictment, information or affidavit made before the magistrate must substantially charge the person demanded with having committed a crime under the law of that state, and the copy of indictment, information or affidavit must be authenticated by the executive authority making the demand."

The demand is supported by an affidavit as authorized by this section of our Code.

Was this affidavit authenticated by the governor of Georgia?

State's exhibit "D" discloses that in the governor's office, of Ohio, among the papers for the extradition of Jordan Powell is the following:

"Executive Department

"The State of Georgia

"The Governor of the State of Georgia to His Excellency, the Governor of Ohio:

"WHEREAS, It appears by the annexed documents, which are hereby certified to be authentic, that JORDAN POWELL stands charged with the crime of assault with intent to murder committed in the County of Treutlen in this state, and it has been represented to me that said fugitive from justice has fled from the justice of this state, and has taken refuge in the state aforesaid;

"NOW, THEREFORE, pursuant to the provisions of the Constitution and Laws of the United States, in such cases made and provided, I do hereby request that the said fugitive from justice be apprehended and delivered to G. R. Barwick, sheriff of Treutlen, who is hereby authorized to receive and convey the said fugitive from justice to the state of Georgia, there to be dealt with according to law.

"IN TESTIMONY WHEREOF, I have

hereunto set my hand, and caused the great seal of state to be affixed. at the capitol in the city of Atlanta, this 5th day of November, A. D. 1937, and of the independence of the United States of America, the One Hundred and Sixty-Second.

"(Signed) E. D. RIVERS,
"Governor."

Annexed to this request of Governor Rivers, of Georgia, is the affidavit of James Day, upon which the warrant was issued by the notary public and ex-officio justice of the peace of Treutlen County, Georgia. The prisoner contends that this is a mere blanket certification, and is not a sufficient certification by the governor of Georgia.

I find nothing in the law either of this state, or of Georgia, that supports this contention. It is not required that the affidavit should be certified █ on its face as authentic; and it is not unusual to embody such certificate in the requisition itself, as was done in this case.

The court, therefore, finds that the affidavit making the charge, which was duly certified as authentic, to be in full compliance with the laws both of the state of Ohio, and of the state of Georgia.

The second contention of the prisoner is that the extradition is not made in good faith; and that it is for an ulterior motive. Sec 109-10 GC provides as follows:

"No person arrested upon such warrant shall be delivered over to the agent whom the executive authority demanding him shall have appointed to receive him unless he shall first be taken forthwith before a judge of a court of record in this state, who shall inform him of the demand made for his surrender and of the crime with which he is charged, and that he has the right to demand and procure counsel; and if the prisoner or his counsel shall state that he or they desire to test the legality of his arrest, the judge of such court of record shall fix a reasonable time to be allowed him within which to apply for a writ of habeas corpus. When such writ is applied for, notice thereof, and of the time and place of hearing thereon. shall be given to the prosecuting officer of the county in which the arrest is made and in which the accused is in custody, and to the said agent of the demanding state."

And the same section, Sub-Section 20 provides:

"The guilt or innocence of the accused as to the crime of which he is charged may not be inquired into by the governor or in any proceeding after the demand for extradition accompanied by a charge of crime in legal form as above provided shall have been presented to the governor, except as it may be involved in identifying the person held as the person charged with the crime."

In habeas corpus proceedings where the petitioner is being held for extradition, the court may inquire into jurisdictional facts; but the court has no author- █ ity to hear the case upon its merits, and determine whether the alleged fugitive is guilty of the crime in the demanding state.

The sole question for this court to determine is, whether the governor of Ohio was authorized to issue a warrant to sheriff Hardman, for the arrest and extradition of Jordan Powell, upon the request of the governor of Georgia. The court will not consider the sufficiency of the evidence before the governor of Georgia.

The last contention of the prisoner in this case is that the affidavit of James Day is bad, because it does not contain a positive allegation that the defendant did commit the crime of assault with intent to murder, upon the person of Julia Day; but is based upon his knowledge and belief.

In the case before me, certain proofs and facts are presented on the hearing, which were not known to the governor of Ohio, issuing the warrant. It is upon his order, in accordance with legislative provisions, that the prisoner for the first time is brought before any one having a duty to perform in the nature of a hearing.

The affidavit of James Day, which supports this extradition, reads as follows:

"Personally came James Day, who on oath, says that to the best of his knowledge and belief Jordan Powell did, on the 16th day of October, in the year 1937, the county aforesaid, commit the offense of—assault with intent to murder, for that the said Jordan Powell, with malice aforethought, did cut, slash and stab one Julia Day with a certain knife, same being a weapon likely to produce death, with intent then and there to kill the said Julia Day unlawfully, feloniously and with malice aforethought, and this deponent makes this affidavit that a warrant may issue for his arrest.

"(Signed) James Day.

"Sworn to and subscribed before me, this 30th day of October, 1937. Benj. Gillis, N. P. and Ex.O.J P. N.P. Ex-Officio J. P., Treutlen Co., Ga."

The vital question in controversy is: "Is this affidavit sufficient in law?"

In the case of Ex Parte Hart, in the Circuit Court of Appeals, of the United States, for the District Court of Maryland, Federal Reporter, Vol. 63, at page 249, the court says, on page 258:

"The removal of a citizen from one state to another as a fugitive from justice, is a matter of great importance, and worthy of serious consideration, yet always to be ordered when a proper case is made. Such action is based upon Article 4, §2, of the Constitution of the United States, and the laws enacted to enable the same to be executed. The provisions referred to will be strictly construed, and all the requirements of the statute must be respected."

Now, what are the requirements of the statute in the instant case?

One of them is that the affidavit made before the magistrate must charge the person demanded with having committed a crime under the law of that state.

The rule in Ohio is that the facts which constitute the crime must be made to appear. This demand is not satisfied by the formal affidavit charging the offense in the language of the statute, but must be met by the facts necessary to make out the crime charged. The affidavit must be so explicit in the necessary allegations of facts as to justify a magistrate in committing the accused. The affidavit must be certain, it must be absolute, showing that the prisoner has committed a crime; and that he committed it in the demanding state; and it is not sufficient if founded on belief or information.

James Day's affidavit says that "to the best of his knowledge and belief."

No less degree of certainty is admissible in an affidavit charging the crime for which extradition is demanded than is required in an indictment for the same offense. If any distinction exists in this respect, the affidavit should be the more full and specific; for the reason that an indictment is the product of an investigation by a grand jury, and we know, in both states, that an indictment must be specific, it must be positive. It can not be "as the grand jurors, to the best of their knowledge and

belief, believes"; and the fact that an inferior magistrate of the state whence the criminal has fled has issued a warrant of arrest, upon an affidavit thus defective, does not justify the inference that a legal crime is charged in the affidavit.

Judge Goff, in the United States Court of District of Maryland, says:

"Holding as we do, that the information cannot be considered as the equivalent of an indictment, we will now examine it. The information is verified by the prosecuting attorney, who swears that he believes the contents thereof to be true, not that they are true. This is not such charging of the commission of a crime before a magistrate of the state as is contemplated by the statute. For the purposes of an affidavit to be used for the arrest and removal of fugitive from justice this is not sufficient. To authorize the removal of a citizen of Maryland to the state of Washington for trial, on a charge of crime, something more than the oath of a party unfamiliar with the facts "that he believes the allegations of the information to be true" should be required, and is demanded by the law. To hold otherwise would enable irresponsible and designing parties to make false charges with impunity against those who may be the subjects of their enmity, and permit them to secure the arrest, imprisonment and removal of innocent persons."

In the case of Thomas v Evans, which was a Mahoning County case, in this appellate district, the court said, on page 341 of Ohio Dec. Reports, Vol. 14, that the affidavit is not sufficient if founded upon belief or information.

James Day's affidavit is founded on the "best of his knowledge and belief."

The courts of this District have held that this is not sufficient, to authorize the issuing of the executive warrant.

The sheriff may properly inquire as to the sufficiency of the other affidavits accompanying the governor's request; that is, the first affidavit of James Day, the affidavit of Julia Day, and the affidavit of G. R. Barwick.

It will be observed in this connection that these affidavits are properly made, and part of the record; but they can not be regarded as affidavits under the section of the Code authorizing the warrant of removal.

The first affidavit of James Day is to the effect that the requisition is made for

the sole purpose of punishing Jordan Powell; and not, in any way, made to collect a debt, or money, or to enforce the payment of any debt or money.

The affidavit of Julia Day is to the effect that Jordan Powell came to her home in Treutlen County, Georgia, on October 16, 1937, in a drunken condition, and assaulted her boy Wiley Day, and while so doing she, in an effort to save her son, went to his rescue; and that he cut her with a knife and beat, and maltreated her without excuse.

The requisition is for the crime of assault with intent to murder.

The affidavit of sheriff Barwick is to the effect that the prosecution is instituted in good faith; and that he is in possession of evidence to bring about a conviction of Jordan Powell.

None of these three affidavits are positive, certain or absolute, that Jordan Powell committed the crime of assault with intent to murder.

The only affidavit that purports to show that, is the affidavit of James Day; and which affidavit is based upon "the best of his knowledge and belief." He says, "to the best of his knowledge and belief."

The court, therefore, considering the face of the record that was presented to Governor Davey, and considering the sufficiency of the affidavits on which this extradition is bottomed, finds that the proceedings are defective in that no competent affidavit of the crime of assault with intent to murder was submitted to the governor, that said affidavit was insufficient in law.

The judgment, therefore, is that the said Jordan Powell be, and he is hereby discharged.