ANTONIO SANCHEZ MALDONADO, petitioner.

Worcester.    October 3, 1973. — December 7, 1973.

Present:  TAURO, C.J., BRAUCHER, HENNESSEY, KAPLAN & WILKINS, JJ.

*Extradition and Rendition. Res Judicata. Estoppel. Habeas Corpus. Practice, Civil,* Report. *Words,* "Estoppel."

Where a petitioner for a writ of habeas corpus had been sought as a fugitive from justice by the Commonwealth of Puerto Rico for violation of probation and had been arrested in Massachusetts pursuant to the Uniform Extradition Act, G. L. c. 276, §§ 11-20R, there was no merit in a contention by the petitioner that the extradition proceeding was precluded on the ground of "estoppel" or res judicata in that he had been earlier arrested in Massachusetts in connection with a charge in Puerto Rico of burglary with intent to commit rape, that the charge of violation of probation should have been put forward in the earlier proceeding here, but had not been, and that he had been released after the earlier proceeding here had been dismissed for want of prosecution; nor was petitioner so "harrassed" by the second extradition proceeding that he should be freed as a matter of fundamental fairness. [362-365]
Discussion of scope of judicial review on habeas corpus of arrests pursuant to the Uniform Extradition Act, G. L. c. 276, §§ 11-20R. [361-362]
The right of one arrested in Massachusetts under the Uniform Extradition Act, G. L. c. 276, §§ 11-20R, to obtain a speedy trial on the charge with respect to which extradition was sought was a matter for the demanding

───────────────

jurisdiction and was not open in a habeas corpus proceeding here under § 19. [365-366]

A report of a case under G. L. c. 231, § 111, with findings by the judge, but without a decision by him, was technically defective and must be dismissed. [366]


PETITION for a writ of habeas corpus filed in Superior Court on June 23, 1972.

The case was reported by *Chmielinski, J.*

*H. Hoover Garabedian (Leslie B. DiCicco* with him) for the petitioner.

*Robert H. Quinn,* Attorney General, *John J. Irwin, Jr.,* Assistant Attorney General, & *David A. Tiberii,* Deputy Assistant Attorney General, for the respondent, submitted a brief.

KAPLAN, J. A judge of the Superior Court has reported a case to this court arising from a petition by Antonio Sanchez Maldonado for habeas corpus. Upon the petition and the Commonwealth's motion to dismiss, the judge held a hearing and made findings, set out in his report.

Following are the relevant events. After communication between the Attorney General of the Commonwealth of Puerto Rico and the Massachusetts State police, Maldonado was complained of in the First District Court of Southern Worcester as being a fugitive from justice, the charge being that he had violated his probation upon a suspended sentence imposed by a court of Puerto Rico for "murder reduced to voluntary manslaughter." On the fugitive complaint, in the ordinary course of the procedure set out in our version of the Uniform Criminal Extradition Act, G. L. c. 276, §§ 11-20R, Maldonado was arrested on March 18, 1972, to await requisition and extradition (§ 20A). The Governor of Puerto Rico on April 7, 1972, addressed his requisition to the Governor of Massachusetts for the return of Maldonado to Puerto Rico to answer to the charge (§ 14). After a hearing in the office of the Attorney General and a report (§ 15), the Governor of Massachusetts on June 9, 1972, issued his warrant for the arrest of Maldonado and delivery to Puerto

Rico's agents for return to Puerto Rico (§ 16). At this stage
Maldonado exercised his right to petition the Superior Court
for habeas corpus to test the legality of such arrest (§ 19).[1]

The petitioner attacks the current extradition proceeding
on the ground that it is foreclosed by an earlier proceeding
which was abandoned. It appears that, upon a charge against
the petitioner in Puerto Rico of burglary with intent to com-
mit rape, a fugitive complaint was entered against him in the
Central District Court of Worcester on December 4, 1970,
resulting in his arrest on process of that court. After a num-
ber of continuances, the complaint was dismissed on August
31, 1971, for want of prosecution. The petitioner contends
that his status as a putative violator of probation was known
to the authorities of Puerto Rico and the Commonwealth
during the period December, 1970, to August, 1971; that on
December 30, 1970, a Puerto Rican court in fact issued a
warrant for the petitioner's arrest for the violation; that that
charge should have been put forward together with the
burglary-rape charge in the attempt to extradite which ended
in August 1971; and as there was an election not to use that
charge for the purpose, the prosecution was "estopped"
from using it some two years later as a basis for the present,
second effort to extradite. Accordingly the petitioner says he
is improperly or unconstitutionally held,[2] and should be
released. The Commonwealth asserts that the facts re-
counted are not a ground for relief on habeas corpus. The
judge's report puts the question of "estoppel" to us as an
important and doubtful question deserving decision.

As regulated by the Uniform Act in harmony with the
Federal Constitution (art. 4, § 2, cl. 2) and the Federal
statute (18 U. S. C. § 3182 [1970]), interstate extradition is a

---

[1] It should be noted that breaking the terms of probation is an extraditable offence
under our act, and our Governor is entitled to respond to a demand by the executive
authority of Puerto Rico as he would to a like demand by the executive authority of
one of the States. See §§ 11, 12. Cf. *Americana of Puerto Rico, Inc.* v. *Kaplus,* 368
F. 2d 431 (3d Cir. 1966), cert. den. sub nom. *Kaplus* v. *Americana of Puerto Rico,
Inc.* 386 U. S. 943 (1967). Puerto Rico has itself adopted a version of the Uniform
Act. Puerto Rico Laws Anno., tit. 34, c. 135, §§ 1881-1881bb (1971).

[2] The petitioner was bailed pending the report to this court, as he was during the
prior proceeding.

summary executive procedure whose effect is essentially to enlarge the territorial area for lawful arrest, the asylum jurisdiction being added to the demanding jurisdiction. Cf. *Biddinger* v. *Commissioner of Police,* 245 U. S. 128, 132-133 (1917). A person held under executive warrant is given an opportunity to attack the legality of his confinement by petition for habeas corpus, but the issues ordinarily open for examination by the court are few: whether what is being charged against the petitioner in the demanding jurisdiction is a crime by that law; whether it is plausibly shown that the petitioner is the person actually sought and that he was in the demanding jurisdiction at the time of the commission of the alleged offence;[3] and whether the Governor's warrant and supporting papers satisfy the formal requirements of the statute. Cf. *Harris, petitioner,* 309 Mass. 180, 184 (1941). Other questions often sought to be raised on habeas corpus are of such a type that they usually can and should be remitted for decision to the courts of the demanding jurisdiction after the petitioner has been delivered there: for example, § 20H indicates that the petitioner's guilt or innocence of the offence charged is not to be inquired into by the court of the asylum jurisdiction except as it may be involved in identifying the person held.

1. In none of its variant meanings can "estoppel" be availed of in the present habeas corpus proceeding. The petitioner uses "estoppel" first in the sense of res judicata or preclusion by former adjudication, a usage of the word which was, indeed, once popular. Restatement: Judgments, § 45, comment b (1942). On analogy to the law of judgments in ordinary civil cases, the petitioner seems to contend that a cause of action or claim for extradition was being asserted in December, 1970, for which two grounds were available, corresponding to the two charges being brought in Puerto Rico; only one ground was asserted; the claim was lost; it would be an impermissible "splitting" of the claim, so he argues, to allow it to be maintained anew, based now on the ground

---

[3]See the excepted situations described in § 13.

previously omitted. *Ratner* v. *Rockwood Sprinkler Co.* 340 Mass. 773, 776 (1960). Restatement, *supra,* § 63.

Were the analogy to a standard civil claim to be indulged, the petitioner's argument would still fail because, even if "claim" is conceived as broadly embracing the relevant "transaction,"[4] here common understanding and practice would lead us to say that there were as many transactions, and hence claims, as there were crimes charged. *Ashe* v. *Swenson,* 397 U. S. 436 (1970), cited by the petitioner, does not suggest otherwise.[5] But if we could assume an interconnection between the two charges so as to make the hypothesized claim a unitary one, there would be no preclusion here because the first extradition proceeding was not disposed of on the merits, but was rather dismissed for want of prosecution. *Day* v. *Crowley,* 341 Mass. 666, 670-671 (1961). Restatement, *supra,* § 49.

However, any analogy to a standard civil claim is quite strained. Because of the preliminary character of extradition as an aid in reaching accused persons to compel them to stand trial, an extradition proceeding is more justly assimilated to a probable cause hearing. See *United States ex rel. Rutz* v. *Levy,* 268 U. S. 390, 393 (1925); *People ex rel. Mark* v. *Toman,* 362 Ill. 232, 237 (1935). In such hearings dismissal upon abandonment by the prosecution does not bar reinstitution, nor does dismissal for lack of cause shown, if additional proof is offered at the second hearing; neither the guaranty against double jeopardy nor doctrines of res judicata are offended by these conclusions even when the same alleged crime is being charged at the successive hearings. *Commonwealth* v. *Hamilton,* 129 Mass. 479, 481 (1880). *Commonwealth* v. *Sullivan,* 156 Mass. 487, 489 (1892). *Commonwealth* v. *Rollins,* 354 Mass. 630, 633 (1968). Suc-

---

[4]See Restatement 2d: Judgments (Tent. draft No. 1, March 28, 1973), § 61, where the scope of "claim" for purposes of res judicata is considered at length.

[5]Mr. Justice Brennan's concurring opinion, 397 U. S. at 448, argues for a spacious conception of what is a criminal "transaction" in respect to double jeopardy, but not even that broad measure would embrace two crimes of different types committed at different times.

cessive warrants in extradition have been traditionally treated in the same way. *Bassing* v. *Cady,* 208 U. S. 386, 391-392 (1908). *Collins* v. *Loisel,* 262 U. S. 426, 430 (1923). *United States ex rel. Rutz* v. *Levy, supra,* 268 U. S. at 393-394. Cf. *Graves's Case,* 236 Mass. 493, 496-497 (1920). There is no change of result under the Uniform Act where a fugitive complaint is dismissed and another brought for the same offence. See *May* v. *Sexton,* 35 Ill. 2d 585, 588 (1966). Going further, we find cases where an accused held on the Governor's warrant is released on habeas corpus because of formal defects, and that disposition is held not to bar a second extradition proceeding that is formally correct. *People ex rel. Mark* v. *Toman, supra,* 362 Ill. at 236-237. *People ex rel. Ritholz* v. *Sain,* 26 Ill. 2d 455, 458-459 (1963), cert. den. sub nom. *Ritholz* v. *Ogilvie,* 374 U. S. 807 (1963). And a failure of proof as to a substantive matter intrinsic to extradition, such as the identity of the petitioner or his presence in the demanding State, resulting in his release on habeas corpus, does not preclude a new proceeding in which additional evidence is supplied. See *People ex rel. Ritholz* v. *Sain, supra,* 26 Ill. 2d at 459; cf. *Wells* v. *Sheriff, Carter County,* 442 P. 2d 535, 540-541 (Ct. Crim. App. Okla. 1968); annotations, 102 A. L. R. 382 (1936); 33 A. L. R. 3d 1443 (1970).[6]

2. Also under the head of "estoppel," there is a suggestion that, quite apart from notions of former adjudication, the petitioner has been so harassed by having to face a second extradition proceeding that, as a matter of fundamental fairness, he should be freed by the court without being surrendered to Puerto Rico; the petitioner speaks of due process. Such an argument is not fully met by pointing out that the petitioner could have avoided any harassment by voluntarily presenting himself in Puerto Rico for determination of the charge of violating probation. On any view of the matter, however, the bare facts as stated in the petition, and as found

---

[6] Our general statute on habeas corpus is consistent with these results. See G. L. c. 248, § 24. A similar statute was so interpreted in *People ex rel. Ritholz* v. *Sain, supra,* 26 Ill. 2d at 457-458.

in the judge's report, can hardly count as harassment which might justify the result that the petitioner would for practical purposes be absolved of his sentence. *In re McBride,* 115 Cal. App. 2d 538, 541-543 (1953). *May* v. *Sexton, supra,* 35 Ill. 2d at 588. *Commonwealth ex rel. Bucksbarg* v. *Good,* 162 Pa. Super. 557, 560-562 (1948). The measure of the present facts appears by contrasting them with a very exceptional case, summarized in the margin, in which oppressive but inconclusive pursuit had gone to the point where in the opinion of the court it called for release on habeas corpus by the asylum State.[7]

3. The suggestion of unfairness may look ahead to the prejudice  that the petitioner might suffer in trying to resist the revocation of his probation if, after the delay in securing his extradition, he is finally returned to Puerto Rico to answer the charge. The petitioner cites *Smith* v. *Hooey,* 393 U. S. 374 (1969), which treats of the guaranty of speedy trial. There an inmate of a prison, facing a criminal charge in another State, sought vainly over a period of time to precipitate his own trial by having the prosecutor apply to those who controlled the prison to allow him temporary transit to the other State. The failure of the prosecutor to act seasonably was held to deprive the prisoner of his constitutional right. Again, we cannot say that the petitioner's grievance about speedy trial is completely answered by the fact that he has not submitted himself voluntarily to the court in Puerto Rico. Cf. *Barker* v. *Wingo,* 407 U. S. 514, 522-530 (1972); *Commonwealth* v. *Horne,* 362 Mass. 738, 741-742 (1973). But here we reach an issue of the kind alluded to above which lies outside the range of a habeas corpus application under G. L. c. 276, § 19. Possible denial of a speedy trial can be considered in Puerto Rico when the petitioner actually faces

---

[7]The accused in that case had been given a stiff sentence for a relatively minor offence by an Alabama court; he served part of his sentence and escaped to Illinois, where he lived openly; extradition proceedings were twice commenced and subsequently abandoned, the accused being imprisoned on both occasions; he had not opposed these extraditions; on the third proceeding for extradition, seventeen years after sentence, the Illinois court released him on grounds of basic unfairness. *People ex rel. Bowman* v. *Woods,* 46 Ill. 2d 57 (1970).

revocation of probation; that the issue may have constitutional dimensions does not point to the Superior Court in Worcester as the preferable locus for its settlement. The cases are clear that such an issue, like others ranging from a contention that a statute of limitations has barred the criminal charge in the demanding State to the point that the statute defining the crime is unconstitutional, is a matter of defence to be raised and decided in the demanding State. *Biddinger* v. *Commissioner of Police, supra,* 245 U. S. at 135. *United States ex rel. Vitiello* v. *Flood,* 374 F. 2d 554, 557-558 (2d Cir. 1967). *Roberts* v. *Hocker,* 85 Nev. 390, 395 (1969). *State ex rel. Davey* v. *Owen,* 133 Ohio St. 96, 102 (1937). *State ex rel. Mitchell* v. *Allen,* W. Va. , - (1971)[a], cert. den. 406 U. S. 946 (1972). Annotation, 77 A. L. R. 902 (1932). We should add that "speedy trial," if it applies at all to revocation of probation, would mean something different in that case than when it relates to an initial indictment or information. See *Glynn* v. *Donnelly,* 470 F. 2d 95, 97-98 (1st Cir. 1972); cf. *Rossello* v. *United States Board of Parole,* 261 F. Supp. 308, 310 (M. D. Pa. 1966); *Dennison* v. *Christian,* 72 Neb. 703, 705-707, 719 (1904). But that question, as we have said, is for the demanding jurisdiction to consider.

4. The judge's report of this case under G. L. c. 231, § 111, was technically defective because the judge did not himself decide the issue posed and report it, but reported it undecided. Under the same statute a judge may report without decision a case stated, and the parties could no doubt have readily agreed to such a case, but this was not done. We call attention — and it is not for the first time — to the specific requirements of § 111. As a prerogative writ is involved, however, we have followed the suggestion of *Vautier, petitioner,* 340 Mass. 341, 344 (1960), and "indicate[d] our views".[8]

*Report dismissed.*

[a]185 S.E. 2d 355, 357-358.

[8]At the argument we were informed by the petitioner's counsel that the petitioner had very recently been held for trial in the Superior Court for a local offence and failed to appear in the court room on the day following an adjournment upon the

close of the Commonwealth's case against him. After a police search, the petitioner was defaulted as upon voluntary absence, and the trial proceeded to a verdict of guilty, with sentencing continued. See *Commonwealth* v. *Flemmi,* 360 Mass. 693 (1971); *United States* v. *Taylor,* 478 F. 2d 689 (1st Cir.), affd. sub nom. *Taylor* v. *United States,* 414 U. S. 17. These facts do not quite bring into play *Commonwealth* v. *Rezendes,* 353 Mass. 228 (1967), where this court on the Commonwealth's motion dismissed exceptions from a criminal conviction because the defendant had become a fugitive. The petitioner here is not appealing or pressing exceptions, nor is he legally shown to us to be a fugitive from Massachusetts justice. We are not entitled to assume that the fact of a local conviction will necessarily moot all questions of extradition. At least in the absence of objection by the Commonwealth, we are willing to "indicate our views."