WILLIAM NICHOLAS IERARDI, petitioner.

Norfolk.    October 8, 1974. — January 17, 1975.

Present: TAURO, C.J., REARDON, QUIRICO, HENNESSEY, & KAPLAN, JJ.

*Extradition and Rendition.    Governor.    Constitutional Law,* Extradition, Separation of powers.    *Affidavit.*

Where rendition is sought from Massachusetts of a person accused of a crime in another State by information rather than indictment, the affidavit required by G. L. c. 276, § 14, need not show on its face probable cause for arrest on the charge in the demanding State. [643-646]

Where a demand for rendition was accompanied by a copy of an information, the supporting affidavit, which was signed by a police officer of the demanding State and only stated that "it is within my knowledge" that the named person on the date specified in the information committed the crimes charged therein, was sufficient in content under G. L. c. 276, § 14. [646]

An affidavit was not insufficient under G. L. c. 276, § 14, in that it contained the typed names of the affiant and the attesting magistrate but not their signatures where it was authenticated by the Governor of the demanding State. [646-647]

---

General Laws c. 276, § 20G, permits a temporary rendition to a demanding State, in the discretion of the Governor of Massachusetts, of a prisoner in a Massachusetts penal institution prior to his discharge from the imprisonment here [647-648]; so construed, § 20G does not violate art. 30 of the Declaration of Rights of the Massachusetts Constitution [649-650].

PETITION for a writ of habeas corpus filed in the Superior Court on July 10, 1973.

The case was heard by *Lynch, J.,* who dismissed the petition. The petitioner alleged exceptions.

*Margaret D. McGaughey* (*Patricia A. O'Neil* with her) for the petitioner.

*Michael C. Donahue,* Deputy Assistant Attorney General, for the respondents.

REARDON, J. This is a petition for a writ of habeas corpus heard by a judge of the Superior Court who made findings which are not in dispute. It appears that the petitioner is serving a sentence at the Massachusetts Correctional Institution at Walpole imposed in the Superior Court. On December 28, 1971, the Governor of Florida signed a "Demand," which set forth that the petitioner had been charged with breaking and entering a dwelling and grand larceny in the State of Florida, and that he had thereafter fled, taking refuge in Massachusetts, and which called for the surrender of Ierardi as a fugitive from justice. The demand is accompanied by the following six documents, all certified by the Governor to be authentic:

1. An application to the Governor of Florida from the assistant State attorney of Dade County, Florida, for a requisition on the Governor of Massachusetts for the rendition of the petitioner.

2. A certified copy of a two-count information executed by the Dade County State attorney on October 30, 1971, charging the petitioner and one other with breaking and entering a dwelling in Miami Beach on October 17, 1971, and the larceny of certain personal effects.

3. A certified copy of an affidavit dated December 13, 1971, reciting that an officer of the Miami Beach police department has knowledge that the petitioner and his

companion broke and entered a dwelling in Miami Beach with intent to commit grand larceny and took miscellaneous property valued in excess of $100 belonging to the lessee of the apartment. The affidavit contains a typewritten signature of the officer followed by a jurat executed by a judge of the Criminal Court of Record for Dade County. The judge's signature is likewise typewritten.

4. A certified copy of a capias for the arrest of the petitioner by Florida sheriffs.

5. A certification by the judge that the clerk of the Criminal Court of Record for Dade County who certified the affidavit is duly qualified, and that his signature is genuine; and a certification from the clerk that the judge is the judge of the Criminal Court of Record of Dade County, and that his signature is genuine.

6. A certificate signed by the clerk stating that the copies of the information, the affidavit and the capias are "true and correct."

On May 4, 1972, the Governor of Florida signed an executive agreement directed to the executive authority of Massachusetts making demand for the rendition of the petitioner, noting that Florida desires to bring him to trial, and agreeing to his return to Massachusetts following criminal proceedings in Florida. Thereafter, on September 28, 1972, the Governor of Massachusetts executed a warrant for the petitioner's arrest to be delivered to the custody of a Florida officer for return to that State. There is no question that the petitioner is the same person named in the demand and its supporting papers, and the warrant signed by the Governor of Massachusetts.

Three issues are raised on exceptions. The first two go to the sufficiency of the affidavit accompanying Florida's demand for extradition of the petitioner: (1) whether the affidavit is invalid due to its failure to state facts establishing probable cause for arrest on the Florida charge; and (2) whether it is invalid because it is not subscribed by the affiant or the attesting magistrate. The third issue is whether the Governor of Massachusetts has the power to

extradite one who is currently serving a Massachusetts sentence without violating art. 30 of the Declaration of Rights of the Commonwealth.

We first discuss the issue of the requirement of probable cause. The pertinent statute, derived from § 3 of the Uniform Criminal Extradition Act (Uniform Act), 9 U. L. A. 274 (1957), is G. L. c. 276, § 14, as appearing in St. 1937, c. 304, § 1, which provides: "No demand for the interstate rendition of a person charged with crime in another state shall be recognized by the governor . . . unless such demand is accompanied by a copy of an indictment found, or of an information supported by affidavit, in the demanding state, or by a copy of an affidavit made before a magistrate of such state . . .. The indictment or information, or the affidavit made before the magistrate who issued the warrant, shall substantially charge the person demanded with having committed a crime under the law of the demanding state . . .." In this instance Florida has provided copies of the information and an "Affidavit in Aid of Extradition and in Support of the Information." The petitioner argues here that the Governor's rendition warrant simulates any other arrest warrant and requires support by probable cause. It is agreed that where the demanding State provides the Governor with a copy of an indictment, that would suffice as representing a grand jury's finding of probable cause. It is argued, however, that an information is only a charging document and that the affidavit in support thereof must set forth the underlying circumstances which establish probable cause. A number of jurisdictions have embraced this theory in recent years following the decision of *Kirkland* v. *Preston,* 385 F. 2d 670 (D. C. Cir. 1967). In that case the court construed the analogous Federal statute, 18 U. S. C. § 3182 (1964), as requiring an affidavit setting forth probable cause under the Fourth Amendment standards. The court emphasized inconvenience and hardship to the prisoner who is wrongly extradited, and cited the ease by which a demanding State can document probable cause in an affidavit similar in scope to one ordinarily required for a search or arrest

warrant with which policemen and judges are most familiar. Decisions to the same effect include *Raftery ex rel. Fong* v. *Bligh,* 55 F. 2d 189 (1st Cir. 1932); *People* v. *McFall,* 175 Colo. 151 (1971); *Grano* v. *State,* 257 Atl. 2d 768 (Super. Ct. Del. 1969); *Sheriff* v. *Thompson,* 85 Nev. 211 (1969); *In re Fritz,* 137 N. J. Eq. 185 (1945); *People* v. *Artis,* 32 App. Div. 2d (N. Y.) 554 (1969); *In re Powell,* 10 Ohio Op. 54 (1937); *State ex rel. Foster* v. *Uttech,* 31 Wis. 2d 664 (1966).

Conversely, a number of States have not required that the affidavit establish probable cause. *Smith* v. *State,* 89 Idaho 70, cert. den. 383 U. S. 916 (1966). *People* v. *Woods,* 52 Ill. 2d 48 (1972). *Bailey* v. *State,* 260 Ind. 448 (1973). *Koprivich* v. *Warden,* 234 Md. 465 (1963). *State* v. *Limberg,* 274 Minn. 31 (1966). *State ex rel. Trigg* v. *Thompson,* 196 Tenn. 147 (1954). These cases tend to hold that extradition statutes, as well as art. 4, § 2, cl. 2, of the United States Constitution, have as their purpose expeditious and summary executive procedures for returning fugitives, with the issue of probable cause to be decided in the demanding State. See also *Matter of Strauss,* 197 U. S. 324, 332 (1905); *Biddinger* v. *Commissioner of Police,* 245 U. S. 128, 132-133 (1917); *Sweeney* v. *Woodall,* 344 U. S. 86, 89-90 (1952). A Massachusetts review of rendition papers has generally been very narrow. See *Davis's Case,* 122 Mass. 324, 328 (1877); *Harris, petitioner,* 309 Mass. 180, 184 (1941); *Murphy, petitioner,* 321 Mass. 206, 211 (1947); *Maldonado, petitioner,* 364 Mass. 359, 362 (1973). In *Germain, petitioner,* 258 Mass. 289 (1927), the petitioner offered to prove the affidavit false in that the affiant had in fact no personal knowledge of the crime. We refused to review this question in view of the fact that the affidavit appeared regular on its face and that the issue raised was one of credibility to be inquired into in the demanding State. Here, however, the petitioner does not ask that we consider the credibility of the affiant but only whether the affidavit on its face states probable cause.

The court's most recent discussion of extradition in *Maldonado, petitioner,* 364 Mass. 359 (1973), appears to us

dispositive of this issue. There it was said, "As regulated by the Uniform Act in harmony with the Federal Constitution (art. 4, § 2, cl. 2) and the Federal statute (18 U. S. C. § 3182 [1970]), interstate extradition is a summary executive procedure whose effect is essentially to enlarge the territorial area for lawful arrest, the asylum jurisdiction being added to the demanding jurisdiction." *Id.* at 361-362. There is no doubt that the Fourth Amendment applies to an arrest, but the Governor's rendition is merely one step in the process of securing that arrest. *Matter of Strauss,* 197 U. S. 324, 332 (1905). Whether there is probable cause to arrest can be fully litigated before the courts of the demanding State for "in delivering up an accused person to the authorities of a sister State . . . [we] are not sending him for trial to an alien jurisdiction, with laws which our standards might condemn, but are simply returning him to be tried, still under the protection of the Federal Constitution . . .." *Biddinger* v. *Commissioner of Police,* 245 U. S. 128, 133 (1917). In addition, principles of comity operate against inquiry into the criminal procedures of the demanding State. Indeed, as we have noted, the petitioner concedes that an indictment may be accepted as establishing probable cause without inquiring beyond the face of the document. Yet there too there must be reliance on the regularity of the demanding State's procedures. Furthermore, it here appears that under Florida law an information alone is considered the equivalent of an indictment and sufficient itself to establish probable cause. *State ex rel. Hardy* v. *Blount,* 261 So. 2d 172, 174 (Fla. 1972).[1] See *Corkern* v. *State,* 269 So. 2d 630, 632 (Miss. 1972); *Salvail* v. *Sharkey,* 108 R. I. 63, 68-69 (1970); *In re Davis,* 126 Vt. 142 (1966). It would seem that we should be hesitant about examining the constitutional basis of another State's actions, and we do not agree that the Fourth Amendment requires that we do.

---

[1] But see *Pugh* v. *Rainwater,* 483 F. 2d 778 (5th Cir. 1973), cert. granted sub nom. *Gerstein* v. *Pugh,* 414 U. S. 1062 (1973) (Florida defendants whose prosecution initiated by information entitled to prompt preliminary hearing on probable cause.).

But the petitioner relies not only on the Fourth Amendment but also on statutory construction. The statute requires an information to be supported by an affidavit. The question is what should this affidavit contain. Here the affidavit stated under oath of a police officer only that "it is within my knowledge that on the 17th day of October, 1971 ... one WILLIAM NICHOLAS IERADI [*sic*]" committed the crimes of breaking and entering and grand larceny. The affidavit describing the crimes simply repeats the recitals of the information. It can be argued that at the very least the affidavit must contain some factual support of the information. However, it may be said that the language "within my knowledge" can be read as meaning within the personal knowledge of the officer. Moreover, to impose strict requirements on the contents of the affidavit would be to venture close to a requirement of a showing of probable cause notwithstanding the existence of the information. For purposes of the matter which concerns us, it would appear that there can be little distinction between an indictment and an information, and the affidavit, while required by the statute, plays a role substantially different from that required prior to the issuance of a warrant in search and seizure procedures.

This affidavit, we believe, is required simply to add assurance to that provided by the information that there is "a reasonable basis for the claim that the alleged fugitive has committed a crime in the demanding state." *Salvail* v. *Sharkey,* 108 R. I. 63, 69 (1970). *State ex rel. Brown* v. *Telander,* 282 Minn. 209, 212-213 (1968). While in this instance the affidavit might preferably have said more, it is enough, in the opinion of the majority, when read together with the information, to indicate that the charge is not unfounded.

The petitioner also objects to the sufficiency of the affidavit in that it contains the names of the affiant and the attesting magistrate typed in the places provided for their signatures. But the pertinent statute, G. L. c. 276, § 14, carries no requirement that the affidavit be signed either by the affiant or by the attesting magistrate. Nor has such a

requirement been referred to in interpreting § 14. In *Murphy, petitioner,* 321 Mass. 206, 213 (1947), this court defined the affidavit in § 14 simply as "a statement in writing sworn before an officer authorized to administer an oath." While some statutes have been construed to require a signature to a sworn statement, see *Cook Borden & Co. Inc.* v. *Commonwealth,* 293 Mass. 174 (1936), this statute contains an explicit requirement that the extradition documents be authenticated by the executive authority of the demanding State, providing a safeguard against fraud not present in other statutes. See *J.P. Smith Co. Inc.* v. *Wexler Constr. Co. Inc.* 353 Mass. 551, 553 (1968). In this case the Governor of Florida certified that the affidavit and all other documents presented are authentic. This is sufficient authentication for extradition despite the lack of signatures on the affidavit. *Kingsbury's Case,* 106 Mass. 223, 226 (1870). *Chung Kin Tow* v. *Flynn,* 218 F. 64, 66-67 (1st Cir. 1914). *Ex parte Riccardi,* 68 Ariz. 180, 188-189 (1949). *People ex rel. Gates* v. *Mulcahy,* 392 Ill. 498, 500 (1946). *Ex parte Green,* 437 S. W. 2d 859, 860 (Texas Crim. App. 1969). Furthermore, the petitioner has said nothing to suggest that the affidavit is spurious or that he is harmed in any way by the lack of signatures. *Ex parte Riccardi, supra. Travis* v. *People,* 135 Colo. 141, 143 (1957). *Andrews* v. *O'Neal,* 241 Ind. 180 (1960).

The petitioner further argues on the basis of statutory construction, and also because of art. 30 of the Declaration of Rights, that while serving a sentence for a Massachusetts crime he cannot be extradited prior to the termination of that sentence.

The pertinent statute is G. L. c. 276, § 20G, inserted by St. 1937, c. 304, § 1 (derived from § 19 of the Uniform Act, 9 U. L. A. 338 [1957]): "If a criminal prosecution has been instituted against such person under the laws of this Commonwealth and is still pending, the governor, in his discretion, may either surrender him on the demand of the executive authority of another state, or hold him until the final disposition of such prosecution or, if convicted and sentenced, until his discharge from imprisonment." It is

first argued that the statute is inapplicable to the petitioner's case because the discretion of the Governor is limited to instances where the prosecution "is still pending" and does not extend to cases where the individual demanded is under sentence and confinement. However, cases under the Uniform Act, § 19, which contains the same phrase, "is still pending," have found the language broad enough to cover rendition of a prisoner then serving his sentence. *Koch* v. *O'Brien,* 101 N. H. 11, 13 (1957). *Commonwealth ex rel. Houser* v. *Seip,* 385 Pa. 545 (1956). See *Murphy, petitioner,* 321 Mass. 206, 214-215 (1947). Furthermore, the act read in its entirety discloses that rendition in the circumstances of the petitioner's case was contemplated. See G. L. c. 276, § 20K, providing for rendition to this State of persons imprisoned in another state.

The petitioner next contends that even if § 20G is applicable the Governor had no power to order rendition until his "discharge from imprisonment." This argument flies in the face of § 20G, which expressly provides the Governor with discretion either to surrender him on demand or hold him until his "discharge from imprisonment." *Harris, petitioner,* 309 Mass. 180, 181-182 (1941). *Murphy, petitioner,* 321 Mass. 206, 214-215 (1947). *Koch* v. *O'Brien,* 101 N. H. 11 (1957). *Rau* v. *McCorkle,* 45 N. J. Super. 191 (1957). *People ex rel. Seiler & Lynch* v. *Warden,* 199 Misc. (N. Y.) 570 (1951). *Commonwealth ex rel. Houser* v. *Seip,* 385 Pa. 545 (1956). The petitioner's interpretation of § 20G would in fact turn the statute on its head. It is apparent that the statute was designed to *extend* the Governor's discretion to allow him to hold the prisoner until the completion of his sentence. Such discretion is permissible notwithstanding the mandate of art. 4, § 2, of the United States Constitution which speaks in terms of delivery on demand. *Taylor* v. *Taintor,* 16 Wall. 366, 370 (1872). See Moore, A Treatise on Extradition and Interstate Rendition, §§ 612, 618 (1891). But this statutory grant of discretion was plainly not intended to force the Governor so to hold the prisoner.

We see nothing in this construction to constitute violation of the separation of powers guaranty of art. 30 of the Declaration of Rights of the Massachusetts Constitution. The petitioner cites *Opinion of the Justices,* 201 Mass. 609 (1909), which answered in the negative the question "whether the Governor has power, by his warrant issued in response to a demand from another State, to take a prisoner, upon whom a sentence of a court is being executed in the State prison, out of the custody of the law of Massachusetts by which he is held, and send him away to another State." *Id.* at 611. Relying on art. 30, the court emphasized that "[e]xcept by a pardon of the convict, neither of the other departments can nullify or set aside a sentence of the judicial department which is in process of execution under a proper warrant from the court." *Id.* at 612. See *Graves's Case,* 236 Mass. 493, 497-498 (1920); *Harris, petitioner,* 309 Mass. 180, 182 (1941).

The opinion referred to was advisory and we examine the subject anew when raised in litigation. *Commonwealth* v. *Welosky,* 276 Mass. 398, 400 (1931). *Opinions of the Justices,* 365 Mass. 665, 679 (1974). As the trial judge noted in his rulings of law, the opinion referred to was handed down in 1909 and "would not be followed today, after the adoption in 1937 of the Uniform Criminal Interstate Rendition Law," based as it was on the statute then on the books, the provisions of which were quite different from the Uniform Act. Under the earlier statute, R. L. c. 217, §§ 11-20 (1902), no provision was made for temporary surrender of the prisoner on condition that he be returned following criminal proceedings in the demanding State. It was in those circumstances that extradition could have been thought to "nullify or set aside" a Massachusetts sentence. By contrast, the Uniform Act permits the Commonwealth to obtain the return of the extradited prisoner to finish his sentence following the proceedings against him in the demanding State. G. L. c. 276, §§ 20K, 20P. See *State ex rel. Gegenfurtner* v. *Granquist,* 271 Minn. 207, 210-212 (1965); *State* v. *Parsells,* 124 N. J. Super. 144, 147-149

(1973); *Commonwealth ex rel. Bonomo* v. *Haas,* 428 Pa. 167, 174-179 (1968). In this instance the Florida Governor has signed an agreement to the effect that the petitioner will be returned to Massachusetts on completion of the Florida proceedings. It thus becomes evident that extradition in these circumstances does not "nullify or set aside" the Massachusetts sentence but serves only to postpone its execution. This court has held in the past that the "execution of sentences according to standing laws is an attribute of the executive department of government." *Sheehan, petitioner,* 254 Mass. 342, 345 (1926). *Commonwealth* v. *Dascalakis,* 246 Mass. 12, 20 (1923). The court in the *Sheehan* case held that statutes in effect at the time of sentencing which give the executive branch certain authority over the terms of the confinement must be read into the court's sentence. As a result, actions taken by the Executive Department pursuant to that authority do not change the sentence and do not infringe on the powers of the judiciary. The same reasoning pertains here, where the possibility of temporary extradition under G. L. c. 276, §§ 11-20R, must be read into the original sentence. To the extent that the views expressed in *Opinion of the Justices,* 201 Mass. 609 (1909), are inconsistent with this conclusion we decline to follow them.

*Exceptions overruled.*