5 Mass. App. Ct. 729        729

Consalvi, petitioner.

---

ROBERT A. CONSALVI, petitioner
(and a companion case[1]).

Suffolk.  May 20, 1977. — December 20, 1977.

Present: HALE, C.J., KEVILLE, GOODMAN, GRANT, ARMSTRONG, & BROWN, JJ.

*Extradition and Rendition. Habeas Corpus. Constitutional Law,* Extradition.

In a rendition proceeding, a Superior Court judge was entitled to rely on an arrest warrant by a judge of Kansas, the demanding State, which recited his finding of probable cause and was not required to review the adequacy of the demanding State's determination [732-733]; GOODMAN, J., with whom BROWN, J., joined, dissenting on the ground that under Kansas law the issuance of an arrest warrant, although stated to be on a finding of probable cause, does not require such a determination as would meet the requirements of the Fourth Amendment to the United States Constitution [733-737].

PETITIONS filed in the Superior Court on January 5, 1977.

---

[1] Edward Colin Kelley, petitioner.

Consalvi, petitioner.

The cases were heard by *Keating*, J.

*Brian J. McMenimen* for Edward Kelley.

*Richard A. Gargiulo* for Robert A. Consalvi.

*Michael J. Barry*, Assistant Attorney General, for the Commonwealth.

ARMSTRONG, J.    Pursuant to formal demands by the Governor of Kansas for rendition of the petitioners, the Governor of the Commonwealth issued warrants for their arrest, upon execution of which they initiated these proceedings for their release on writs of habeas corpus. See G. L. c. 276, §§ 11-20R. A judge of the Superior Court denied the relief sought, and the petitioners have appealed. Their single contention on appeal, though presented in several variations, is that the documents which accompanied the Kansas demands are insufficient to establish probable cause that the petitioners committed the crimes charged, and thus that their arrests are invalid.

The papers in question include a copy of a complaint, subscribed by two Kansas law enforcement officers and sworn to before a Kansas judge, which outlines in lengthy detail the facts surrounding and constituting the crimes charged and includes a list of witnesses, two of whom are the affiants. The papers also include an arrest warrant issued by the same judge, which recites his finding of probable cause to believe that the petitioners (among others) committed the offenses charged. Both the complaint and the warrant are properly authenticated and comply on their face with the requirements of G. L. c. 276, § 14. *Murphy, petitioner,* 321 Mass. 206, 211-214 (1947). No contention is made that the petitioners are not the persons sought by Kansas. See *Maldonado, petitioner,* 364 Mass. 359, 362 (1973). The sole question is whether probable cause has been sufficiently established.

We accept, for purposes of decision, the petitioners' contention that the sworn complaint, treated as an affidavit, could not by itself support a valid finding of probable cause because it does not furnish a basis for determining that the allegations made therein are based on personal

knowledge of the affiants or reliable information imparted to them. See *Giordenello* v. *United States,* 357 U. S. 480 (1958). From this it follows that the judge, who had before him no other evidence pertinent to reliability, could not have made an independent finding of probable cause; nor did he purport to do so. Rather, he credited (at least impliedly) the Kansas judge's finding, and it seems clear that he acted correctly in doing so.

"[T]he Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest." *Gerstein* v. *Pugh,* 420 U. S. 103, 114 (1975). Interstate rendition involves an extended or significant restraint of liberty within the meaning of that rule and accordingly must be preceded by a judicial determination of probable cause. *Ierardi* v. *Gunter,* 528 F. 2d 929, 930 (1st Cir. 1976). But the Fourth Amendment does not require that that determination be made in the courts of the asylum State. "If . . . the papers submitted by the [demanding State] were to show that a judicial officer or tribunal there had found probable cause, Massachusetts would not need to find probable cause anew, nor would it need to review the adequacy of the [demanding State's] determination. Instead, it would be entitled to rely on the official representations of its sister State that the requisite determination had been made; thus in our view Massachusetts may credit an arrest warrant shown to have been issued upon a finding of probable cause in [the demanding State] just as it would credit [the demanding State's] indictment." *Ierardi* v. *Gunter, supra* at 931. See also *Puopolo, petitioner,* 372 Mass. 868 (1977); *Smith* v. *Helgemoe,* 117 N.H. 91 (1977); *Pippin* v. *Leach,* 189 Colo. 385, 390 (1975); *In re Golden,* 65 Cal. App. 3d 789, 794-796, appeal dismissed and cert. denied sub nom. *Golden* v. *California,* 434 U. S. 805 (1977).[2]

---

[2] The petitioners also argue that we should adopt the rule of *Kirkland* v. *Preston,* 385 F. 2d 670 (D.C. Cir. 1967), which seems (at 676) to permit the asylum State to credit a finding of probable cause made in the demanding State by a grand jury but not a finding of probable

The briefs indicate that the parties attempted to introduce evidence as to the proceedings which were had before the Kansas court at the time of the issuance of the arrest warrant, apparently for the purpose of shedding light on whether the Kansas judge had a basis for his finding of probable cause other than the sworn complaint. The judge correctly declined to receive such testimony. Compare *Germain, petitioner,* 258 Mass. 289, 297-299 (1927); *Ierardi, petitioner,* 366 Mass. 640, 644 (1975). To do so would have violated the most elementary principles of comity. The courts of this State should ordinarily decline to review the regularity of judicial proceedings in other States.[3] Whatever may have been the practice in Kansas before *Gerstein* v. *Pugh,* we decline to assume that that case has escaped the attention of the Kansas courts and that the practice today is to issue arrest warrants without regard to a showing of probable cause. "It would be an act of unwarranted arrogance for us to ascribe to ourselves virtue superior to that of other courts and so to assert power to hear and determine the faithfulness to duty of a sister court occupying a place like ours in the federal system." *Garrison* v. *Smith,* 413 F. Supp. 747, 757 (N.D. Miss. 1976), quoting *Johnson* v. *Matthews,* 182 F. 2d 677, 681 (D.C. Cir. 1950). In any event the Kansas judge's express

cause made in the demanding State by a judge. If that is a correct reading, we think the more tenable rule to be that of *Ierardi* v. *Gunter,* which, as shown in the text, differentiates instead between judicial findings of probable cause (whether by a judge or a grand jury) and nonjudicial findings of probable cause, as upon an information. For a discussion of the latter, see *Grano* v. *Delaware,* 257 A.2d 768, 773-774 (Del. Super. 1969).

[3] The principle applies to this court no less than the trial court. We decline to consider the additional affidavits submitted by the parties after oral argument, confining our consideration to the correctness of the judge's rulings on the basis of the record before him. Were we to do otherwise, we would find the affidavits inconclusive even if accepted as true, because they furnish no basis for determining what is the critical question in such cases: namely, whether the oath taken by the officers comprehended only the contents of the affidavit or complaint or whether it also encompassed whatever oral representations were made to the judge at the time the complaint was sworn out (as to which we have no knowledge). See *Frazier* v. *Roberts,* 441 F. 2d 1224, 1228 (8th Cir. 1971).

statement makes it clear that the question of probable cause was considered, and that probable cause was found, in these cases.

The record shows that the petitioners have been released on personal recognizance; thus, the entry in each case will be that judgments shall enter denying the writs and the petitioners shall be remanded to custody under the warrants of the Governor. *Murphy, petitioner*, 321 Mass. 206, 215 (1947), and cases cited.

*So ordered.*

This case was initially heard by a panel composed of Keville, Goodman and Armstrong, JJ., and was thereafter submitted on the record and briefs to the other Justices, all of whom took part in this decision in accordance with the provisions of Mass.R.A.P. 24 (a), 365 Mass. 872 (1974).

GOODMAN, J., dissenting (with whom Brown, J., joins). It is submitted that the "complaint"[1] and the "arrest warrant"[2] in this case are an insufficient basis under the Fourth Amendment to the United States Constitution for the petitioners' arrest. The validity of this position depends on the extent to which the holding in *Ierardi, petitioner*, 366 Mass. 640, 645 (1975), has been modified by

---

[1] The Kansas Code of Criminal Procedure defines a complaint as "a written statement under oath of the essential facts constituting a crime . . . ." Kan. Stat. Ann. § 22-2202(6) (1974). Section 22-3201 of Kan. Stat. Ann. (1974) provided: "The charge. (1) Prosecutions in the district court shall be upon indictment or information. Prosecutions in other courts shall be upon complaint." Effective January 10, 1977, § 22-3201 was amended to provide: "Prosecutions in the district court shall be upon complaint, indictment or information." Kan. Stat. Ann. § 22-3201 (1976 Supp.). Our references hereafter to the Kansas statutes are to the versions appearing in Kansas Statutes Annotated (1974) which in all respects material to this case remain unchanged.

[2] The arrest warrant recites that "[w]hereas, a complaint in writing and under oath has been filed with the undersigned magistrate at Wichita, Sedgwick County, Kansas, and the undersigned magistrate finds that there is probable cause to believe [there follows the complaint verbatim] . . . . You are, therefore, commanded forthwith to arrest the said [ten named individuals, including the two petitioners] . . . ."

Consalvi, petitioner.

---

*Gerstein* v. *Pugh,* 420 U. S. 103 (1975). In *Ierardi, petitioner, supra,* the Supreme Judicial Court held that "[w]hether there is probable cause to arrest can be fully litigated before the courts of the demanding State" and permitted extradition to Florida on the basis of an information brought by a Florida prosecutor. No finding of probable cause in Florida or Massachusetts had been made prior to extradition. Subsequently, *Gerstein* v. *Pugh,* 420 U. S. at 114, held that "the Fourth Amendment requires a judicial determination of probable cause as a prerequisite to extended restraint of liberty following arrest" and ruled that the Florida procedure was violative of the Fourth Amendment. Under Florida procedure an arrest could be made pursuant to a capias based on a prosecutor's information, and the arrestee had no way of obtaining a judicial determination of probable cause for the arrest for at least thirty days. The Court said (at 124-125), "Whatever procedure a State may adopt, it must provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty . . . ."

In *Ierardi* v. *Gunter,* 528 F. 2d 929, 930 (1st Cir. 1976), the Court of Appeals applied the *Gerstein* case to the extradition proceedings which had been considered in *Ierardi, petitioner.* It held that "*Gerstein* requires a judicial determination of probable cause as a prerequisite to interstate extradition. After *Gerstein* such a determination must precede 'any significant pretrial restraint of liberty,' 420 U. S. at 125 . . . and we think interstate extradition necessarily involves significant restraint." Accord, *Wellington* v. *South Dakota,* 413 F. Supp. 151 (S.D.S.D. 1976) (following *Ierardi* v. *Gunter*). Contra, *In re Golden,* 65 Cal. App. 3d 789, 794-796 (1977) (which does not mention *Ierardi* v. *Gunter*). The court in *Ierardi* v. *Gunter, supra* at 930, pointed out that "[a]t best extradition means an extended period of detention, involving custody pending administrative arrangements in two states as well as forced travel in between. At worst it means separation from a familiar jurisdiction and effective denial of the support of family, friends and familiar advisors." That court thus

affirmed the grant of habeas corpus relief to Ierardi on the ground that "the rendition demand ... did not embody the prior judicial determination of probable cause required by the fourth amendment, and the requisite determination had yet to be made" (at 932).

The court noted (at 931) that its holding did not require that Massachusetts make its own determination of probable cause: "Massachusetts may credit an arrest warrant shown to have issued upon a finding of probable cause in Florida just as it would credit a Florida indictment." This is quoted with approval in *Puopolo, petitioner,* 372 Mass. 868 (1977), also an extradition case.

We therefore turn to the complaint and the arrest warrant in these cases to determine whether such a showing has in fact been made. The recitation in the arrest warrant of a finding of probable cause would ordinarily be determinative — assuming the continued rejection of *Kirkland* v. *Preston,* 385 F. 2d 670 (D.C. Cir. 1967), which holds that the court of the asylum jurisdiction should review determinations of probable cause made in the demanding State. However, the significance of the Kansas finding and its limitation depend on Kansas procedure. It is the Kansas procedure which must supply the dictionary for determining the meaning in the arrest warrant of the symbols "finds that there is probable cause to believe." See *Moore, petitioner,* 2 Mass. App. Ct. 399 (1974) (in which this court examined California procedure to determine the significance of a California information). Our examination of the Kansas statutes and case law leads us to conclude that the issuance in Kansas of an arrest warrant, though stated to be on a finding of probable cause, does not require such a determination as would pass muster under the Fourth Amendment. The Kansas Code of Criminal Procedure, Kan. Stat. Ann. § 22-2301 (1974), provides that "[u]nless otherwise provided by law, a prosecution shall be commenced by filing a complaint with a magistrate." Section 22-2302 provides: "If the magistrate finds from the complaint, or from an affidavit or affidavits filed with the complaint or from other evidence, that there is probable cause

to believe both that a crime has been committed and that the defendant has committed it, a warrant for the arrest of the defendant shall issue." Further, Kan. Stat. Ann. § 22-3201 (1974) (see n.1) provides: "(2) The complaint, information or indictment shall be a plain and concise written statement of the essential facts constituting the crime charged, which complaint, information or indictment, drawn in the language of the statute, shall be deemed sufficient."

The complaint is thus a charging document which needs do nothing more than set out a crime in the words of the statute.[3] Indeed, § 22-3201 provides that "(3) The court may strike surplusage from the complaint, information or indictment." Nor need the magistrate require more. The court syllabus in *State* v. *Woods*, 214 Kan. 739, 741 (1974), states: "The allegations of a complaint positively sworn to provide a magistrate with a sufficient basis for making the requisite finding of probable cause to issue a warrant for arrest." The court cites *State* v. *Carey*, 56 Kan. 84, 87 (1895), in which it held that mere unqualified verification under oath was sufficient to foreclose any further inquiry as to knowledge of the person who swore to the complaint. See *State* v. *Addington*, 205 Kan. 640, 644 (1970); *State* v. *Giddings*, 216 Kan. 14, 16-17 (1975); Meyer, Arrest Under the New Kansas Criminal Code, 20 U. of Kan. L. Rev. 685, 690-697 (1972). And, as that article states (at 693), "Normally, the warrant will be issued solely on the basis of a complaint filed with the magistrate."[4] In these

---

[3] See Kan. Stat. Ann. § 22-3201(2) (1974) which provides that "[t]he complaint, information or indictment shall state for each count the official or customary citation of the statute ... which the defendant is alleged to have violated."

[4] Compare Wilson, Basic Rules of Arrest, Seach and Seizure, A Manual for Kansas Peace Officers, Governmental Research Center, The University of Kansas 7 (1964): "The complaint may be made by any person who knows the facts. Frequently, it is thought the better plan to require the signature and oath of the injured party as this may help to assure his later cooperation. Often, however, the complaint will be signed and verified by the prosecuting attorney or investigating officer on the basis of facts revealed in the investigation."

circumstances the issuance of an arrest warrant "from the complaint" filed by enforcement officers — despite the assertion of a finding of probable cause — can stand no better than the capias by the Florida court on the basis of the information filed by the prosecuting attorney. See *Ierardi* v. *Gunter, supra* at 929. To be sure the magistrate might have made a finding of probable cause on the basis of "affidavits filed with the complaint or from other evidence . . . ." Kan. Stat. Ann. § 22-2302. But from the arrest warrant before us (see n.2) it appears that there was nothing before the magistrate but the verified complaint. Indeed, both parties in response to inquiries at oral argument have submitted affidavits which agree that, as stated in the Assistant Attorney General's affidavit, "[t]he context of the presentation of the complaint [to the magistrate] was informal and the responses made by Davis [who signed the complaint] were not under oath." The informal unsworn responses cannot avail to convert the complaint from a charging document to a showing of probable cause. U. S. Const. amend. IV. *Frazier* v. *Roberts*, 441 F. 2d 1224, 1227-1228 (8th Cir. 1971).[5]

We conclude that pursuant to the procedure here followed and sanctioned by the State of Kansas " 'the inferences from the facts which lead to the complaint [and the arrest warrant]' [were] drawn not 'by a neutral and detached magistrate,' as the Constitution requires, but instead, by a police officer 'engaged in the often competitive enterprise of ferreting out crime,' *Giordenello* v. *United States*, [357 U. S. 480, 486 (1958) ] . . . ." *Aguilar* v. *Texas*, 378 U. S. 108, 115 (1964).

---

[5] Even if it were possible to treat the complaint as an affidavit purporting to establish probable cause (and we submit it is not), the question may still remain whether (though *Ierardi, petitioner,* constrains review generally of the sufficiency of the allegations in an affidavit) we should take note of so obvious a defect as a verification under oath which, as the majority opinion is willing to assume, does not purport to be on personal knowledge or on reliable information. See *Giordenello* v. *United States,* 357 U. S. 480, 481, 486-487 (1958); *Aguilar* v. *Texas,* 378 U. S. 108, 112-114 (1964).