STATE ex rel. FRANK ARNOLD v. PHILIP C. JUSTUS and Another.[1]

October 29, 1901.

Nos. 12,879—(207).

**Habeas Corpus.**

Upon habeas corpus review in this court, under Laws 1895, c. 327, to inquire into the validity of the custody of a fugitive from justice from a foreign state, detained on an extradition warrant, *held*:

**Scrutiny of Court.**

1. That this court will not, on such proceedings, extend its inquisition beyond the rendition warrant to ascertain whether the prisoner had been previously unlawfully arrested, or was in unlawful custody at the time such warrant was served upon him.

**Illinois Constitution—Acting Governor.**

2. Under the constitution of the state of Illinois, in case of disability of the governor the lieutenant governor shall act in his place, and upon the disability of the lieutenant governor the president pro tem. of the senate shall act as governor. Where the duties of the chief executive of that state are supplied by either of these constitutional substitutes, it is not improper to designate such substitute as the "acting governor," in which case the attestation by the secretary of state, under the state seal, as "by the governor," is proper, and requires full faith and credit from foreign jurisdictions.

**Requisition Papers—R. S. (U. S.) 1878, § 5278.**

3. Where on the demand of the fugitive the requisition certifies that all papers returned are true and correct copies, and one of them con-

[1] Reported in 87 N. W. 770.

tain a criminal accusation, indorsed as "an indictment," signed by a foreman as "a true bill," such authentication is a substantial compliance with the act of congress (R. S. [U. S.] 1878, § 5278).

## Same.

4. Where a requisition from a foreign state had been considered by the executive of this state, and a warrant issued thereon, it is to be presumed that it was granted upon competent proof that the prisoner was a fugitive from justice, charged with a crime, at a time when he was within the state from which he had fled.

## Governor's Warrant.

5. The governor's warrant need not set forth facts nor grounds upon which the same is issued with the certainty required in criminal pleadings. If it appears therein that under the federal constitution and the act of congress the prisoner is demanded as a fugitive, it is sufficient. *Held*, further, that the warrant in this case was in these respects in compliance with law.

Appeal by relator from an order of the district court for Ramsey county, Bunn, J., vacating a writ of habeas corpus and remanding Edward McNichols to the custody of respondent, Philip C. Justus, sheriff of that county. Affirmed.

*Lawler & Arnold*, for appellant.

*W. B. Douglas*, Attorney General, and *Thomas R. Kane*, County Attorney, for respondents.

LOVELY, J.

Edward McNichols is in custody upon the warrant of the governor of this state, issued to honor a requisition from the chief magistrate of Illinois in extradition proceedings. After arrest upon the warrant, the prisoner obtained a writ of habeas corpus from Judge Bunn, of the district court for Ramsey county, who, after hearing, upon the return thereof, quashed the writ and remanded the prisoner to the custody of the respondents. Under the provisions of Laws 1895, c. 327, petitioner appeals from such order to this court, where the whole issue has been presented anew, as required by the provisions of that statute.

Evidence has been received in behalf of the prisoner, embracing the formal requisition, with accompanying documents, as well as the certificates acted upon by the governor of this state; also the

executive warrant upon which the prisoner is detained. The several claims urged by prisoner's counsel to secure his discharge will be stated and considered in the order in which they are presented in counsel's brief and on the argument:

1. From the evidence it appears that McNichols on September 3 last was arrested in the city of St. Paul without process. Habeas corpus proceedings were had in his behalf before Judge Brill, of the district court for Ramsey county. An order discharging the prisoner was made therein, but, before the prisoner left the court room, officers followed in close proximity, and rearrested him. It is claimed that the officers arrested the prisoner while in the court room. We are not disposed to deny this claim, even to the full extent contended by counsel for prisoner, since we deem all acts preliminary to the action of the executive of this state upon the requisition not of vital importance on this investigation. It may be admitted that under numerous pretexts McNichols was from the time of the order of discharge by Judge Brill restrained of his liberty until the extradition warrant was served on September 21, following, whereupon the writ of habeas corpus was sought from Judge Bunn, whose denial of relief and remand of the prisoner to the custody of respondents is the order which is now under review.

Upon the facts thus summarized, it is urged that from the time of the first discharge by Judge Brill until the service of the extradition warrant the prisoner was unlawfully restrained of his liberty for the same cause and by the same officers who arrested him under the extradition warrant; hence service of such warrant while in such custody was illegal, in violation of the personal rights of the prisoner, and in disregard of the effect of the previous discharge by a court of competent jurisdiction, whereby the forcible and unlawful arrest affects their subsequent action, and taints with illegality any effective use of the executive warrant, at least until the prisoner had first been fully set at liberty.

We are unable to adopt this view. The fact that the prisoner was arrested unlawfully previous to the issuance of the extradition warrant does not furnish a substantial reason why that

instrument, if legal on its face, should be ignored. Conceding that the first arrest and subsequent detention of the prisoner were in violation of law; that up to the time when the extradition warrant was issued and delivered to the proper officer an assault had been committed upon him, followed by false imprisonment, for which he might have damages; that he was arrested in Judge Brill's court improperly, in contempt of the order of that court,— these were acts with which we have nothing to do on this hearing. It seems to us very clear that the wrongs and injuries which the prisoner had suffered from the alleged previous misconduct of the officers to whom the extradition warrant was afterwards issued cannot modify the warrant itself, nor excuse or permit any disobedience of its commands. State v. Ross, 21 Iowa, 467.

If the warrant was effective to justify prisoner's custody, such custody was justified from the time it was served upon him. We are quite clear that we cannot redress prisoner's independent and collateral grievances upon this review, nor set aside a legal arrest because of a previous unlawful one; for, if the warrant is a protection to respondents at all, such protection inures from its service.

2. The requirements in proceedings for the extradition of fugitives in the demanding state, as well as the state where such fugitives have taken asylum, under section 2, article 4, of the federal constitution, are provided for by the federal law in the following terms:

"Whenever the executive authority of any state or territory demands any person as a fugitive from justice, of the executive authority of any state or territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any state or territory, charging the person demanded with having committed treason, felony or other crime, certified as authentic by the governor or chief magistrate of the state or territory from whence the person so charged has fled, it shall be the duty of the executive authority of the state or territory to which such person has fled to cause him to be arrested and secured,"

to be delivered up in accordance with further proceedings therein contained. R. S. (U. S.) tit. 66, § 5278.

Upon the construction of this act it is urged for prisoner that no demand from the proper authorities of Illinois has been made upon the governor of this state. This contention is based upon the statement in the body of the requisition that the same is made by the "acting governor" of the state of Illinois. The requisition is signed and attested by H. A. Northcott as governor; also by the secretary of state that it is executed "by the governor," to which latter attestation is attached the great seal. The pith of the point in this respect is that an "acting governor" is not recognized in the constitution of Illinois as the "chief executive" of that state, and his designation as acting governor does not, therefore, comply with the act of congress, which requires the demand to be made by the "chief executive" of the state from which the fugitive has fled.

If this assumption must be unqualifiedly accepted, more difficulty might arise in the disposition of this subject than appears to be necessarily involved. By reference, however, to the constitution of the state of Illinois, we find, under article 5, the following provisions:

"Section 1. The executive department shall consist of a governor, lieutenant-governor, secretary of state,  *  *  *" etc.

"Section 6. The supreme executive power shall be vested in the governor.  *  *  *"

"Section 17. In case of the death, conviction on impeachment, failure to qualify, resignation, absence from the state or other disability of the governor, the powers, duties  *  *  * until the disability shall be removed, shall devolve upon the lieutenant-governor."

"Section 18. The lieutenant-governor shall be president of the senate.  *  *  * The senate shall choose a president pro tempore, to preside in case of the absence  *  *  * of the lieutenant-governor, or when he shall hold the office of governor."

"Section 19. If there be no lieutenant-governor, or if the lieutenant-governor shall, for any of the causes specified in section 17 of this article, become incapable of performing the duties of the office, the president of the senate shall act as governor until the vacancy is filled." R. S. (Ill.) 1896, pp. 140–144.

Whether H. A. Northcott is lieutenant-governor, or president of the senate acting as governor, the designation in the requisi-

84 M.—16

tion would not be inappropriate; nor can we say it is incorrect, under the imposition of duties in the possible contingency provided for in the constitution whereby either might be required to perform the duties of the chief executive of his state, and in such event might be the only person authorized to make a demand upon the executive authority of another state for the return of a fugitive from justice. There being a constitutional officer to whom both the description in the requisition as "acting governor" and in the attestation of the secretary of state as governor would apply, there would seem to be no inconsistency between the two designations as applicable to the term "chief executive" in the act of congress. We must therefore give full faith and credit to such attestation, and hold that the requisition was properly made in this case. Const. (U. S.) art. 4, § 2.

3. The requirement in the act that the demanding state must produce before the executive of the state from which the fugitive is demanded a duly-authenticated copy of the indictment is imperative, since it is expressed in terms of unmistakable import in the law. Counsel for prisoner claim that such requirement has not been complied with. There is before us, as a conceded portion of the requisition, a copy of a criminal charge, in which, at a time and place specified, within the county of Cook, state of Illinois, Eddie McNichols was charged with having offered to bribe a juror in a cause pending in a court of general jurisdiction of such state, sitting in Cook county, while engaged in the trial of a third party for the crime of burglary, which effort to bribe is alleged to have been committed contrary to the form of statute, and "against the peace and dignity of the state of Illinois."

The suggestion that this might have been a mere presentment, because the accusation does not contain the word "indictment" on its face, or aver in terms that the accused was indicted, but, rather, that "the grand jury do present," etc.,—a not unusual introductory allegation in common-law indictments,—is of little force. The instrument contains a criminal charge, alleging all the substantial constituents of a crime under common-law rules of pleading. It also appears to be one of the files of a court of general jurisdiction, and is indorsed, "Indictment for attempting

and offering to bribe a juror;" also, "A true bill;" and is signed by the foreman of the grand jury. It is also certified by the clerk of the court as a true, perfect, and complete copy of the "indictment" in a case now pending between the people of the state of Illinois and Eddie McNichols.

The judge of such court certifies that the certificate of the clerk conforms to law. There is also the further certification of the clerk that such judge holds the office described in his own certificate. In this respect such authentication complies with the most rigid demands of the federal laws for proof of judicial records between the states. The authentication of the indictment, with its indorsements, is contained in the requisition, which is signed, as heretofore indicated, by the chief magistrate of Illinois, and reads:

"It appears by the papers required by the statutes of the United States, which are hereto annexed, and which I certify and duly authenticate in accordance with the laws of this state, that Eddie McNichols stands charged with the crime of attempting and offering to bribe a juror, which I certify to be a crime under the laws of this state," etc.

It is not easy to see how more could be required under the act of congress to satisfy the executive of a state from whom a fugitive is demanded to show that there was an indictment, or that a crime is charged therein in substantial terms; hence the suggestion that the written accusation referred to might have been a presentment or information, rather than the pleading named in the act of congress, is not tenable.

4. It is essential to furnish the executive of the state from which the fugitive is demanded proof that he fled from the justice of the demanding state. This is a matter upon which the chief magistrate granting the warrant should have evidence, although the law does not describe its character, nor the precise rules by which such fact shall be established. It would seem to follow that the issuance of the warrant embraces the exercise of a prerogative of the governor of the state where the fugitive is, and that it must be presumed, in the absence of proof to the contrary, where the executive acts in such case, that he has performed his duty in

that respect. Hence, when a proper warrant has been issued, the burden of showing that the prisoner has not fled or is not a fugitive rests upon such prisoner in habeas corpus proceedings. Ex parte Sheldon, 34 Oh. St. 319; People v. Pinkerton, 77 N. Y. 245; People v. Donohue, 84 N. Y. 438; Davis Case, 122 Mass. 324; Wharton, Cr. Pl. (8th Ed.) 34; Spear, Extrad. 494, § 5.

5. This brings us to the most serious question which has been urged in behalf of the prisoner, viz., that the governor's warrant in this case does not upon its face disclose that the prisoner is a fugitive from justice, which involves the subsidiary fact that he was in the demanding state when the crime was committed,— a prerequisite to the granting of the requisition. Ex parte Smith, 3 McLean, 121, Fed. Cas. No. 12,968. The substantive allegation in the warrant before us is that

"A demand has been made, pursuant to the constitution and laws of the United States, by H. A. Northcott, acting governor of the state of Illinois, upon the governor of the state of Minnesota, for the delivery of Eddie McNichols as a fugitive from justice of the state of Illinois."

Counsel for the prisoner urge that this is insufficient as an allegation of the requisite facts in the respects stated; the contention being that the warrant should have stated as a fact that Mc-Nichols was a fugitive, while the above averment is a mere inference, and falls short of certainty in that respect.

The form of the above allegation in extradition warrants is one that has been in use in this state for more than thirty years. In several cases the right of detention of alleged fugitives has been questioned in habeas corpus proceedings in this court. State v. Richardson, 34 Minn. 115, 24 N. W. 354; State v. Richter, 37 Minn. 436, 35 N. W. 9; State v. O'Connor, 38 Minn. 243, 36 N. W. 462; State v. Goss, 66 Minn. 291, 68 N. W. 1089. But this is the first time the precise suggestion against the form of the warrant has been made,—not a conclusive argument, of course, but entitled to some consideration.

A criminal warrant need not set forth the facts necessary to justify the detention with the specific certainty of a criminal pleading. If it appears substantially from the body that the right

to make the arrest is justified upon legal grounds, it is sufficient to authorize action of the officer to whom it is delivered, and to protect him in its execution. This is elementary. The allegation quoted, that McNichols had been demanded under the constitution and the laws as a fugitive, constitutes a mixed averment of law and fact, inconsistent with any other conclusion than that he has been legally accused of crime by the demanding state for acts committed while he was there, and had sought asylum in this state. It would seem clear that, if he is demanded under the constitution and the laws, it can only be in the instances which are provided for in R. S. (U. S.) 1878, § 5278, to which such allegations must be referred. This section provides for certain preliminaries; hence the statement in a warrant that a demand has been so made under such act is only reconcilable with the view that such preliminaries have been adopted. We must therefore hold that the executive warrant in this case is sufficient.

Judgment must be entered affirming the order appealed from, quashing the writ, and remanding the prisoner to the custody of the respondents; but inasmuch as the prisoner's counsel have asked, in the event of an adverse decision, for a stay to enable them to apply for a writ of error, such judgment will not be formally entered by the clerk until the further order of the court.