**Edwin Harold ALKERTON, Petitioner,**

v.

**Ed WINGENBACH, Respondent.**

**Cr. No. 487.**

Supreme Court of North Dakota.

April 30, 1974.

Benjamin C. Pulkrabek, Bismarck, for petitioner.

Lester J. Schirado, State's Atty., Morton County, Mandan, for respondent.

PAULSON, Judge.

Edwin Harold Alkerton seeks his release from the custody of the sheriff of Morton County, Ed Wingenbach, pursuant to a petition for a writ of habeas corpus and the writ which was issued by this court.

Mr. Alkerton was arrested by the Mandan Police Department on February 19, 1974; and on February 21, 1974, he appeared before the Honorable William F. Hodny, Judge of the Morton County Court of Increased Jurisdiction. Judge Hodny, after determining that Mr. Alkerton was being sought as a fugitive from the States of Washington and Nebraska, and that Mr. Alkerton would not waive extradition to either of these States, ordered him committed to the custody of the Morton County sheriff for a period of thirty days to enable the States of Washington and Nebraska to procure his extradition; and the judge set Mr. Alkerton's bail in the sum of $5,000. Judge Hodny also appointed Mr. Benjamin C. Pulkrabek of the Office of the Public Defender to represent Mr. Alkerton, and, pursuant to §

29–30–10, N.D.C.C., returned the proceedings to the Morton County District Court.

On March 22, 1974, one day prior to the termination of the 30-day commitment period ordered by Judge Hodny, the Honorable C. F. Kelsch, Judge of the District Court of Morton County, entered an ex parte order continuing the detention of Mr. Alkerton until March 29, 1974. This ex parte order was entered after Judge Kelsch learned that the state's attorney of Cowlitz County, Washington, would appear in Mandan on March 25, 1974, or shortly thereafter, with a warrant for the extradition of Mr. Alkerton from North Dakota to the State of Washington.

On March 26, 1974, Mr. Alkerton's attorney filed a petition for a writ of habeas corpus with the Morton County Clerk of the District Court, alleging illegal detention because the 30 days set forth in Judge Hodny's order had expired and the governor's warrant had not been served. Said writ was returnable at 1:30 p. m. on March 27, 1974. However, shortly before the March 27 hearing on the writ of habeas corpus, the governor's warrant was served on Mr. Alkerton and, because of the service of such warrant, the writ of habeas corpus was quashed.

On March 28, 1974, Mr. Alkerton petitioned the district court a second time for a writ of habeas corpus seeking his discharge from custody. The petition for such writ, in addition to challenging the validity of the ex parte order, also challenged the validity of the governor's warrant. After the hearing on this writ, which was held on March 29, 1974, Judge Kelsch quashed this second writ and granted Mr. Alkerton 10 days within which to prepare and file a petition for a writ of habeas corpus with the North Dakota Supreme Court.

Mr. Alkerton then petitioned this court for a writ of habeas corpus, and a writ of habeas corpus was issued on April 8, 1974, returnable at 3:00 p. m. on April 10, 1974.

The right of one State to require the extradition by another State of a person who has committed an offense against the laws of the demanding State, and who has fled to the asylum State, rests upon the Constitution of the United States, Article IV, § 2 thereof, which provides, in pertinent part:

"A person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up to be removed to the State having Jurisdiction of the Crime."

Article IV, § 2, of the Constitution of the United States is not self-executing, and Congress has enacted legislation to give it effect, now 18 U.S.C.A. § 3182, which provides:

"Whenever the executive authority of any State or Territory demands any person as a fugitive from justice, of the executive authority of any State, District or Territory to which such person has fled, and produces a copy of an indictment found or an affidavit made before a magistrate of any State or Territory, charging the person demanded with having committed treason, felony, or other crime, certified as authentic by the governor or chief magistrate of the State or Territory from whence the person so charged has fled, the executive authority of the State, District or Territory to which such person has fled shall cause him to be arrested and secured, and notify the executive authority making such demand, or the agent of such authority appointed to receive the fugitive, and shall cause the fugitive to be delivered to such agent when he shall appear. If no such agent appears within thirty days from the time of the arrest, the prisoner may be discharged."

Language similar to that contained in Article IV, § 2, of the Constitution of the United States has been set forth by the

North Dakota Legislature in § 29–30–02, N.D.C.C.:

> "*Delivery of fugitives upon requisition by governor.*—A person charged in any state or territory of the United States with treason, felony, or other crime, who shall flee from justice and be found in this state, on demand of the executive authority of the state or territory from which he fled, must be delivered up by the governor of this state to be removed to the state or territory having jurisdiction of the crime."

Other extradition statutes which are relevant in the instant case are:

> 29–30–04, N.D.C.C. "*Proceedings for arrest and commitment of person charged with crime in another state.*— The proceedings for the arrest and commitment of a person charged with crime in another state are similar in all respects to those provided in this title for the arrest and commitment of a person charged with a public offense committed in this state, but an exemplified copy of an indictment found, or other judicial proceeding had, against him in the state or territory in which he is charged with having committed the offense, may be received as evidence before the magistrate."

> 29–30–05, N.D.C.C. "*Accused may be committed—Time.*—If from the examination it appears that the accused has committed, in another state, the crime alleged, the magistrate, by warrant reciting the accusation, must commit him to the proper custody of his county for such time, to be specified in the warrant, as the magistrate may deem reasonable, to enable the arrest of the fugitive under the warrant of the executive of this state, on the requisition of the executive authority of the state or territory in which he committed the offense, unless he gives bail as provided in section 29–30–06, or until he is legally discharged."

> 29–30–09, N.D.C.C. "*When accused must be discharged.*—The person arrested as a fugitive must be discharged from custody or bail unless before the expiration of the time designated in the warrant or undertaking he is arrested under the warrant of the governor of this state."

> 29–30–10, N.D.C.C. "*Magistrate to make return—Duty of district court.*— The magistrate must return his proceedings to the next district court of the county, which thereupon must inquire into the cause of the arrest and detention of the person charged, and, if he is in custody, or if the time for his arrest has not elapsed it may discharge him from detention, or may order his undertaking of bail to be canceled, or may continue his detention for a longer time, or may readmit him to bail, to appear and surrender himself within a time specified in the undertaking."

In the hearing held pursuant to Mr. Alkerton's second petition for a writ of habeas corpus, the legality of the governor's warrant under which Mr. Alkerton is now being detained was upheld by the district court and is not being challenged in this court by Mr. Alkerton. Mr. Alkerton concedes that the commitment proceedings before Judge Hodny were proper and legal and Mr. Alkerton does not assert that the 34-day period during which he was detained in custody prior to the service of the governor's warrant was an unreasonable length of time in which to give the governor of the State of Washington an opportunity to issue a requisition for Mr. Alkerton's extradition.

Mr. Alkerton strenuously urges that he was denied due process when Judge Kelsch —without first giving notice to Mr. Alkerton and without affording Mr. Alkerton an opportunity for a prior hearing—issued the ex parte order continuing Mr. Alkerton's detention until March 29, 1974, and asserts that he is, therefore, now being unlawfully detained.

In the case of In re Bryant, 129 Vt. 302, 276 A.2d 628(1971), the Vermont Supreme Court was confronted with a similar argument with reference to a claim of unlawful

detention. In *Bryant,* the petitioner sought a writ of habeas corpus to secure his release from prison where he was being detained by virtue of an executive warrant. The petitioner had originally been arrested on a fugitive warrant and had been detained for more than 30 days before the governor's warrant was served upon him. The petitioner alleged that he should be released because Vermont law provides that a person held as a fugitive can be incarcerated for a period not to exceed 30 days, within which time the governor's warrant must be served.

Although the Vermont court in *Bryant* agreed that the detention of the petitioner for more than 30 days was unlawful, it nevertheless affirmed the trial court's denial of petitioner's writ of habeas corpus because the petitioner, at the time of the hearing on the writ, was being held under the authority of a valid governor's warrant. The Vermont court relied on the following in *Bryant, supra* 276 A.2d at 631:

> "It is well settled that a prisoner has no right to a writ of habeas corpus unless he is entitled to immediate release, and the writ will not issue unless he is presently restrained of his liberty without warrant of law. Macomber v. Hudspeth, 10 Cir., 115 F.2d 114, cert. denied. 313 U.S. 558, 61 S.Ct. 833, 85 L.Ed. 1519. 39 C.J.S. Habeas Corpus § 13, p. 443.

> "The fact that the Governor's arrest warrant was issued more than 30 days after accused's original arrest as fugitive from justice did not vitiate the executive warrant. [Citations omitted.] The issuance of the Governor's warrant, and the detention of the plaintiff by virtue of his arrest under such warrant, was not made defective by a possible illegality in his previous detention beyond the statutory time under his arrest on the fugitive from justice warrant."

■ While the instant case presents a factual situation which is distinguishable from that in *Bryant, supra*, we nevertheless believe that the holdings expressed in *Bryant* are also applicable to the instant case. Accordingly, we adopt the rationale of *Bryant*, and conclude that the question of the legality or illegality of prior extradition proceedings becomes moot upon the issuance and service of a governor's warrant. Glavin v. Warden, State Prison, 163 Conn. 394, 311 A.2d 86 (1972); Luker v. Koch, 489 P.2d 191 (Colo.1971); State ex rel. Brown v. Hedman, 279 Minn. 483, 157 N.W.2d 756 (1968); Lott v. Heyd, 315 F. 2d 350 (5th Cir. 1963); Stallings v. Splain, 253 U.S. 339, 343, 40 S.Ct. 537, 539, 64 L. Ed. 940, 943 (1920).

■ Applying the *Bryant* reasoning to the instant case, we hold that the issuance of the governor's warrant and the detention of Mr. Alkerton by virtue of the authority of that warrant were not made defective by the possible illegality of his previous detention under the ex parte order of the district court.

While the foregoing holding renders moot Mr. Alkerton's contention that his detention under the ex parte order was illegal, nevertheless, because of the close time factor involved in the instant case between the service of the governor's warrant and the hearing on the district court's original writ of habeas corpus, and because of the possibility of a similar situation arising in the future, we believe that a discussion of Mr. Alkerton's contention is necessary.

■ Regardless of whether the extradition proceedings held pursuant to § 29–30– 10, N.D.C.C., are criminal in nature as argued by Mr. Alkerton, or civil in nature as argued by the State of North Dakota, we believe that in order to extend to the alleged fugitive the due process of law guaranteed by the United States Constitution, it would be better practice to give to an alleged fugitive notice and an opportunity to be heard on a request for any additional extension of time, rather than to base such continuance on an ex parte order.

■ Mr. Alkerton was not accorded notice and an opportunity to be heard prior

to the time Judge Kelsch issued the ex parte order continuing Mr. Alkerton's detention for an additional seven days, and such procedure therefore constitutes error. In light of the fact that Mr. Alkerton's counsel stated that his arguments would be the same on remand as were presented to this court, and since such arguments are unpersuasive, we therefore find that such error was without prejudice. State v. Iverson, 187 N.W.2d 1, 41 (N.D.1971), cert. denied 404 U.S. 956, 92 S.Ct. 322, 30 L.Ed.2d 273 (1971).

The writ of habeas corpus is quashed and Mr. Alkerton is remanded to the custody of the sheriff of Morton County, to be held for a period of fifteen days to permit the State of Washington to receive and convey Mr. Alkerton back to Washington, pursuant to the governor's warrant.

ERICKSTAD, C. J., and TEIGEN, VOGEL and KNUDSON, JJ., concur.