DOUGLAS LEON BROWN, petitioner.

Suffolk.    April 7, 1976. — May 11, 1976.

Present: REARDON, QUIRICO, BRAUCHER, & KAPLAN, JJ.

*Extradition and Rendition.    Habeas Corpus.    Arrest.*

In a habeas corpus proceeding challenging the petitioner's confinement on an extradition warrant, the fact that the petitioner's prior arrest by Massachusetts authorities on a fugitive complaint may have been illegal did not provide a basis for discharging the petitioner after his arrest under the extradition warrant. [269-271]

PETITION for a writ of habeas corpus filed in the Superior Court on January 13, 1976.

The case was heard by *Mazzone*, J.

After review was sought in the Appeals Court, the Supreme Judicial Court, on its own initiative, ordered direct appellate review.

*Renée D. Chotiner* for the petitioner.

*John P. Corbett*, Assistant Attorney General, for the respondent.

KAPLAN, J.   On January 8, 1976, the petitioner herein, Douglas Leon Brown, was arrested on an extradition warrant of the Governor of the Commonwealth. This was issued in response to a requisition from the Governor of the State of West Virginia which averred that the petitioner

had been indicted for the crime of murder in that State
and had fled and taken refuge in the Commonwealth.
Brought before a judge of the Municipal Court of the City
of Boston, the petitioner was informed of the demand for
his surrender and the crime with which he was charged,
and of his right to have counsel apply for habeas corpus
to test the legality of the proceedings. See G. L. c. 276, § 19.

Through counsel the petitioner duly made application
for habeas corpus which was heard by a judge of the Su-
perior Court on February 9, 1976. No question was or
could be raised about the sufficiency of the extradition war-
rant or the regularity of the procedures in both States
leading to its issuance; and the sheriff of Berkeley County,
West Virginia, was on hand to identify the petitioner as
the person under indictment there. Counsel for the peti-
tioner urged, however, that the petitioner's confinement
was illegal because of the following circumstances which
were recounted in an offer of proof. On October 18, 1975 —
a few days before the West Virginia indictment was found,
and thus before the dates of the requisition upon the Gov-
ernor and of the extradition warrant[1] — Boston police
officers, on the basis of an unsubstantiated tip that a
"wanted" man was at a certain apartment in Roxbury,
had gained entrance to the place by false pretenses, found
the petitioner there, and apprehended him when he was
unable to furnish identifying papers. They took him to a
police car, interrogated him without Miranda warnings,
and elicited from him his true name and the fact that he
was indeed "wanted." A check by the police ran the trail
back to Berkeley County, West Virginia. (Although not
part of the offer of proof, it appears that from on or about
October 25, 1975, the petitioner was held under a fugitive
complaint lodged by a police officer in the Municipal Court
of the City of Boston. See G. L. c. 276, § 20B. The com-

---

[1] The indictment was returned on October 21, 1975; the prosecutor's
request to the Governor of West Virginia to issue his requisition was
dated October 31; requisition issued on November 21; the extradition
warrant of the Governor of the Commonwealth bore the date Decem-
ber 11.

plaint was dismissed when the Governor's warrant was executed.)

Counsel argued that if the proof on behalf of the petitioner conformed to the offer, the petitioner would be entitled to be discharged: the October 18, 1975, arrest, having been made without probable cause, would be an unconstitutional invasion; and as the subsequent procedures, including the extradition warrant, stemmed from — were the "fruit" of — the arrest and the information then obtained, the petitioner's present confinement under the extradition warrant would be unlawful. The Commonwealth, without conceding that any illegality had occurred, contended that, even if the proof should match the offer, it would not provide a basis for discharging the petitioner on habeas corpus. Agreeing with the Commonwealth, the judge, over petitioner's objection and exception, refused to receive the proof tendered under the offer, and received the Commonwealth's formal and other proof, and denied the petition, thus remanding the petitioner to custody. After appeal was lodged in the Appeals Court, a single justice of that court stayed delivery of the petitioner to the West Virginia agents pending determination of the appeal. We took the case for direct review.

The action of the judge below was traditional and correct. It has been decided repeatedly that a petitioner arrested on a Governor's extradition warrant cannot claim release on the ground that there were irregularities in a prior arrest by which he may have been held to await the warrant. This proposition has been applied to mishaps or abuses in the statutory procedures antecedent to the extradition warrant. *Lott* v. *Heyd,* 315 F.2d 350 (5th Cir. 1963). *White* v. *Leach,* 188 Colo. 62, 64 (1975). *Glavin* v. *Warden, Conn. State Prison,* 163 Conn. 394, 400-401 (1972). *Willin* v. *Sheriff of Wicomico County,* 201 Md. 667, 669 (1953). *Ackerton* v. *Wingenbach,* 217 N.W.2d 787, 790-791 (N. Dak. 1975). *In re Bryant,* 129 Vt. 302, 305-306 (1971). It has held as well for some grosser illegalities in the prior arrest comparable to those depicted in the present offer of proof. *Stallings* v. *Splain,* 253 U.S. 339, 343

(1920). *Cohen* v. *Warden, Montgomery County Detention Center,* 252 F. Supp. 666, 672-673 (D. Md. 1966). *Luker* v. *Koch,* 176 Colo. 75, 77-78 (1971). *Travis* v. *People,* 135 Colo. 141, 145-146 (1957). *State ex rel. Arnold* v. *Justus,* 84 Minn. 237, 239-240 (1901).

In explanation, courts, besides pointing to the special summary and executive character of extradition proceedings which distinguish them from actual trials for crime (see *Maldonado, petitioner,* 364 Mass. 359, 361-362 [1973]; *Commonwealth* v. *Glavin,* 354 Mass. 69, 73 [1968]), have said that what is tested on habeas corpus is the legality of the cause for detention existing at that time, and the extradition warrant, if otherwise valid, supplies sound, present legal cause even though there may have been prior illegality. See *Stallings* v. *Splain, supra* at 343; *In re Byrant, supra* at 366. Thus the possible invalidity of an earlier arrest is said to be a "moot" issue (see *Luker* v. *Koch, supra* at 76; *Glavin* v. *Warden, Conn. State Prison, supra* at 401), or merely a "collateral grievance." *State ex rel. Arnold* v. *Justus, supra* at 240. If there were infirmities in that arrest, then the arrest should have been attacked by habeas corpus or some other remedy before it was superseded and rendered nugatory by the arrest under the extradition warrant. See *People ex rel. Millet* v. *Babb,* 1 Ill. 2d 191, 200 (1953).

These propositions are further supported by the reasons of policy mentioned in *People ex rel. Taylor* v. *Johnson,* 47 Ill. 2d 103 (1970), a case resembling the present on its facts. Taylor, a fugitive from a reformatory sentence about to be delivered to Ohio agents for return to that State, petitioned for habeas corpus and in that proceeding offered to prove that the Illinois police, concurrently with successive arrests, apparently unlawful, had through unlawful search secured certain materials from Taylor's residence including a writing from Taylor to his brother about his social security number and card which revealed his identity as Taylor, wanted in Ohio. (During his seven month sojourn in Illinois Taylor had used the name Boyd.) On

behalf of Taylor the claim was made that the alleged viola-
tion of constitutional rights should be enough to infect
and invalidate the subsequent extradition proceedings and
so would entitle him to be discharged on habeas corpus.
The trial judge refused the offer of proof and, as the ex-
tradition was otherwise regular, quashed the writ. The
Supreme Court of Illinois affirmed.

Justice Schaefer wrote for the court that the assumed
fact that Illinois police had violated Taylor's constitutional
rights could not in reason justify depriving Ohio of the
means of proceeding against Taylor for violation of its own
laws. To work such a deprivation would be to push an
exclusionary rule beyond its proper limits. "[T]he con-
sequence of the illegal conduct of Illinois police officers is
visited upon a sovereign that can do nothing to prevent or
punish that conduct. And insofar as the purpose of the
exclusionary rule is 'to effectively enforce the Fourth
Amendment' (*Linkletter* v. *Walker* (1965) 381 U.S. 618,
637 . . . ), that purpose is, we think, adequately served by
continued enforcement of the exclusionary rule within its
ordinary compass." 47 Ill. 2d at 105-106.

In this view of the present case we need not explore the
question what the Commonwealth could or could not do by
way of rearrest, if the petitioner were released according to
his prayer.[2] Nor need we consider whether the petitioner
might have a cause of action against the police officers. See
*Speaks* v. *McGregor*, 355 F. Supp. 1129 (W.D. Va. 1973).
Whether West Virginia might choose to give any effect to
the alleged events in the Commonwealth is, of course, for
that State to decide when the petitioner is returned for
trial there. Cf. *United States* v. *Toscanino*, 500 F.2d 267
(2d Cir.), rehearing en banc denied, 504 F.2d 1380 (1974),
motion to vacate judgment and dismiss indictment denied,

---

[2] The petitioner appears to argue that there could be no rearrest in
the Commonwealth until the petitioner merged into the general popu-
lation, so that a rearrest would not be traceable to the original illegal-
ity. But cf. *Luker* v. *Koch, supra* at 78; *State ex rel. Arnold* v. *Justus,
supra* at 239.

398 F. Supp. 916 (E.D.N.Y. 1975); *Boag* v. *State*, 21 Ariz. App. 404, 405-406 (1974); *Commonwealth* v. *Kulp*, 225 Pa. Super. 345, 348-349 (1973).[3]

*Judgment affirmed.*

---

[3] The present case does not resemble *Ierardi* v. *Gunter,* 528 F.2d 929 (1st Cir. 1976); S. C., *Ierardi, petitioner,* 366 Mass. 640 (1975), where the question was whether probable cause had been shown regarding the commission of the crime in the demanding State so as to justify issuance of the warrant of the Governor of the Commonwealth, the asylum State.