## In re Courtney Saunders a/k/a Courtney Elliot

[415 A.2d 199]

No. 453-79

Present: Barney, C.J., Daley, Billings and Hill, JJ., and Underwood, Superior Judge, Specially Assigned

Opinion Filed April 8, 1980

*David A. Howard,* Public Defender, Bennington, for Petitioner.

*M. Jerome Diamond,* Attorney General, and *Susan R. Harritt,* Assistant Attorney General, Montpelier, and *K. James Malady, III,* Deputy State's Attorney, Bennington, for Respondent.

**Underwood, Supr. J.** This is an appeal by the State of Vermont from a December 7, 1979, order of the Rutland Superior Court granting petitioner's request for discharge on a writ of habeas corpus. Actual discharge of petitioner was stayed under the same order pending appeal to this Court.

As he was about to enplane from the Bennington airport on Friday, September 28, 1979, petitioner was arrested by a Vermont state trooper on an information and warrant charging him with being a fugitive from justice from the state of Michigan, a violation of 13 V.S.A. § 4953.

On the following Monday, October 1, 1979, petitioner was arraigned and examined before an acting district court judge, pursuant to 13 V.S.A. § 4953. On the basis of an affidavit of the arresting officer, the district court judge found probable cause that petitioner may have fled from the State of Michigan in order to avoid serving a two- to fourteen-year sentence for

uttering and publishing. Bail was set at $20,000 cash, and petitioner was incarcerated in the Rutland Community Correctional Center for failure to meet the bail requirements. This bail order further stated, however, that if extradition proceedings were not commenced by the demanding state on or before October 31, 1979, the pending fugitive from justice charge would be dismissed.

On October 18, 1979, petitioner filed his first petition for a writ of habeas corpus in the Rutland Superior Court to test the legality of his arrest. Thereafter, the State of Vermont persuaded the district court to amend its previous order by extending the time in which the demanding state could commence extradition proceedings from October 1, 1979, to December 30, 1979. If extradition proceedings were not commenced by then, the fugitive from justice charge would be dismissed.

A hearing was subsequently held in the Rutland Superior Court on petitioner's first petition for a writ of habeas corpus. The court found that petitioner's arrest as a fugitive from justice was illegal as it was made without probable cause, and ordered that the petitioner be discharged from his incarceration. When it issued this order, the court did not know that petitioner had already been arrested that morning on a governor's warrant, dated November 6, 1979, issued by the Governor of Vermont in response to Michigan's initiation of extradition proceedings. The Department of Corrections was faced with a dilemma—it had a governor's warrant arresting petitioner in the forenoon of November 9th and a court order, dated November 9, 1979, received in the afternoon of November 9th, releasing petitioner.

In order to resolve this problem, a hearing was held in the Rutland Superior Court on November 15, 1979. At the hearing the State moved for a stay of the November 9th order and to permanently quash that order, and petitioner requested execution of the order or, in the alternative, that a second writ of habeas corpus issue. The court granted the petitioner's request for a second writ of habeas corpus, but stayed petitioner's release pending an appeal by the State to this Court. This ruling was grounded on petitioner's re-arrest under the governor's warrant being the fruit of an illegal arrest of petitioner at the Bennington airport. The court found the two arrests to

be so closely related that the illegality of the first arrest necessarily tainted the second arrest.

The State appeals from this order, 12 V.S.A. § 3953, the sole issue being whether petitioner's November 9th arrest under the governor's warrant vitiated any prior irregularities from his earlier arrest at the Bennington airport.

It should be noted that the parties agree that all extradition documents signed by the Governor on November 6th were in proper order and in conformity with the Uniform Criminal Extradition Act. 13 V.S.A., chapter 159, subchapter 2. We therefore concern ourselves only with the appeal from the December 7th court order granting petitioner's *second* petition for habeas corpus.

Petitioner asserts that Fourth Amendment principles must be applied to the extradition process, and that the governor's warrant in this case must be examined in light of petitioner's initial illegal arrest. See generally *Michigan* v. *Doran,* 439 U.S. 282, 291 n.2 (1979) (Blackmun, J., concurring). From this petitioner argues that his second arrest, on authority of the governor's warrant, was an illegal arrest as it was tainted by his earlier illegal arrest as a fugitive from justice. He analogized that the second arrest was "the fruit of the poisonous tree," *Wong Sun* v. *United States,* 371 U.S. 471 (1963), and that if he had not been illegally arrested at the Bennington airport he would have left the state and the governor's extradition warrant never would have issued as there would then have been no fugitive in the state.

Petitioner's contentions as advanced involve an extension of the so-called "exclusionary rule," generally regarded as an evidentiary rule of criminal procedure. See generally *Mapp* v. *Ohio,* 367 U.S. 643 (1961); *Wolf* v. *Colorado,* 338 U.S. 25 (1949); *Weeks* v. *United States,* 232 U.S. 383 (1914). In considering whether or not to accept petitioner's extension of the exclusionary rule to this habeas corpus proceeding, we must look to the purpose and rationale behind the rule. In this regard, we are guided by the words of Mr. Justice Powell in his majority opinion in *Stone* v. *Powell,* 428 U.S. 465 (1976), where, after a review of the history of the exclusionary rule, he states:

> The primary justification for the exclusionary rule then is the deterrence of police conduct that violates Fourth

Amendment rights. *Post-Mapp decisions have established that the rule is not a personal constitutional right. It is not calculated to redress the injury to the privacy of the victim of the search or seizure, for any "[r]eparation comes too late."* Instead, "the rule is a judicially created remedy designed to safeguard Fourth Amendment rights generally through its *deterrent effect . . . ."* (Citation omitted.)

*Id.* at 486 (emphasis added) (quoting *United States* v. *Calandra,* 414 U.S. 338, 348 (1974)).

■■ The exclusionary rule is, therefore, not a personal right of the petitioner, but rather is a rule to deter wrongful police conduct. In view of this deterrent rationale, we cannot accept petitioner's extension of the exclusionary rule even if we were to agree with petitioner that the Fourth Amendment applies to the extradition process, a question which we neither reach nor decide. Moreover, within the context of extradition proceedings, no deterrent function is served by punishing a demanding state for the wrongful actions of the asylum state, "for the consequence of the illegal conduct of [the asylum state's officials] is visited upon a sovereign that can do nothing to prevent or punish that conduct." *People ex rel. Taylor* v. *Johnson,* 47 Ill. 2d 103, 105, 264 N.E.2d 198, 199 (1970); cf. *State* v. *Harbaugh,* 132 Vt. 569, 576, 326 A.2d 821, 825 (1974).

■ In addition, the facts that petitioner was originally arrested as a fugitive from justice, that his arrest was subsequently determined by a lower court to have been made without probable cause, and that petitioner was ordered to be released from incarceration, do not vitiate the governor's warrant. The later arrest of petitioner by virtue of the governor's warrant was not made defective by any possible illegality in his first arrest. "It has been decided repeatedly that a petitioner arrested on a Governor's extradition warrant cannot claim release on the ground that there were irregularities in a prior arrest by which he may have been held to await the warrant." *In re Brown,* 370 Mass. 267, 269, 346 N.E.2d 830, 831 (1976) (citations omitted). See also *In re Bryant,* 129 Vt. 302, 306, 276 A.2d 628, 631 (1971).

■ Moreover, extradition proceedings generally are intended to be summary and executive in nature, *Michigan* v. *Doran, supra,* 439 U.S. at 288, and are to be distinguished from actual trials for crime. See *In re Maldonado,* 364 Mass. 359, 304 N.E.2d 419 (1973). Thus, where it appears that an extradition warrant is otherwise valid, sound legal cause will exist for detention notwithstanding that there may have been a prior illegal arrest. "[T]he possible invalidity of an earlier arrest is said to be a 'moot' issue . . . or merely a 'collateral grievance.' " *In re Brown, supra,* 370 Mass. at 270, 346 N.E.2d at 832 (citations omitted). See also *In re Bryant, supra,* 129 Vt. at 306, 276 A.2d at 631.

*The order of the Rutland Superior Court dated December 7, 1979, is vacated and petitioner shall stand committed to respond to the governor's warrant dated November 6, 1979.*