431 So.2d 1075 (1983)
STATE of Louisiana, Appellee,
v.
Jiles Ray JAMES, Appellant.
No. 15234-KA.
Court of Appeal of Louisiana, Second Circuit.
May 3, 1983.
Rehearing Denied June 8, 1983.
*1077 Caddo Parish Indigent Defender Office by Frances Baker Jack, Shreveport, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara B. Rutledge, Asst. Atty. Gen., Baton Rouge, Paul J. Carmouche, Dist. Atty., Robert W. Gillespie, Jr., Catherine M. Estopinal, Asst. Dist. Attys., Shreveport, for appellee.
Before PRICE, FRED W. JONES, Jr. and NORRIS, JJ.
PRICE, Judge.
Defendant, Jiles Ray James, was convicted of aggravated rape, (LSA-R.S. 14:42), aggravated kidnapping (LSA-R.S. 14:44), and armed robbery (LSA-R.S. 14:64). Subsequently, he was sentenced to two terms of life imprisonment and one term of 99 years imprisonment at hard labor, all to be served consecutively, without benefit of parole or probation. Defendant now appeals on the basis of nine assignments of error.
FACTS:
On the evening of September 26, 1980, the victim, a young woman, was working at the Citgo Quick Mart at the corner of Line Avenue and Pierremont Road in Shreveport, Louisiana. At about 11:00 p.m., a man came into the store and bought gasoline and cigarettes.
The man left the store but returned minutes later. He asked the victim for change so that he could donate to a charity advertised in the store. The victim gave him some change. The man then left the store again only to return five or six minutes later. The victim, fearing a robbery, removed $100 from the cash register before the man entered the store. When the man entered, he revealed a small caliber pistol. He demanded some money from the register. After the victim had given the man $50 from the register, he ordered her to come out from behind the counter and to get into his car. She followed his orders.
Once inside the man's automobile, the man forced the victim's head into his lap, holding the pistol to her temple. They drove to a spot ten to fifteen minutes away from the store. The man stated that he did not feel that $50 was enough and that he felt he "deserved a little more." He ordered the victim to remove her pants. She tried to stall him, but finally stated that she wouldn't remove her pants until he put the pistol in the back seat. He complied with her request. The victim then removed her pants and the man had sexual intercourse with her.
According to the testimony of the victim, after the rape was completed the man stated that he "might as well kill her since he had robbed, kidnapped, and raped her." She talked the man out of killing her by promising to lie to the police. The man let the victim out of the automobile a few blocks from the Citgo station. Once released, the victim ran to a nearby house where she had the residents call the police. The police brought her back to the Citgo station, where the police were already there, having been summoned by a customer concerned about the unattended station.
The victim gave a description of the man to the police. Several days later she drew a composite sketch of the man. Shortly thereafter, a photographic lineup was shown to her and she identified the defendant as the man that robbed and raped her. The defendant was arrested several months later in California and was brought to Louisiana for trial. The victim identified the defendant once again at a live lineup.
ASSIGNMENT OF ERROR NO. 1:
The defendant's original motion to suppress was directed at the alleged invalidity *1078 of his arrest by authorities in California for a minor offense which precipitated knowledge of his whereabouts to Louisiana authorities. Defendant contends that as the California arrest made it possible for Louisiana authorities to apprehend defendant under the warrant that had been issued in Louisiana in connection with the matters now under review, that the state in these prosecutions has the burden of proving that the initial California arrest was irrelevant to the instant proceedings which were initiated by a valid Louisiana warrant. We find no error in the trial court's ruling in this regard. There is no physical evidence, inculpatory statement, or other evidence which was discovered as a result of the California arrest which was used in these proceedings.
Furthermore, conceding that the state has such a burden in this instance and that the California arrest was found invalid, the second arrest under the Louisiana warrant is far too attenuated to be tainted by the prior arrest. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
Also relevant by analogy to this issue is the fact that a few states have ruled that the illegality of the original arrest of a fugitive from justice from another state will not affect the validity of subsequent proper extradition proceedings. In Re Brown, 370 Mass. 267, 346 N.E.2d 830 (Mass.1976); In Re Saunders, 138 Vt. 259, 415 A.2d 199 (Vt.1980).
In his supplemental motion to suppress, the defendant contends that the lineup procedures used in identifying him as the perpetrator were impermissibly suggestive because he was the only person in either the live or photographic lineup with a facial tatoo. In her initial description of her assailant the victim had specifically mentioned that the man had a facial tatoo.
Testimony at both the hearing on the motion to suppress and the trial indicated that the tatoo was not readily apparent in the picture used at the photographic lineup. Our inspection of the photos used confirms this.
However, even if the tatoo had been visible, this would not necessarily invalidate either lineup. As the United States Supreme Court stated in Mason v. Brathwaite, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977):
... reliability is the lynchpin in determining the admissibility of identification testimony for both pre- and post-Stovall confrontations. Factors to be considered are set out in [Neil v.] Biggers, 409 U.S. [188] at 199-200 [93 S.Ct. 375 at 388, 34 L.Ed.2d 401]. These include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his prior description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation. Against these factors is to be weighed the corrupting effect of the suggestive identification itself.
Applying this analysis to the present case: the victim was with the man that robbed and raped her for at least thirty minutes. While they were in the store, the light was good so the victim had an excellent opportunity to view the subject. Being the victim of the crimes, her attention was certainly fixed upon the perpetrator; she was not a casual observer. The victim gave a description to the police on the day of the offense. She also drew a sketch of the man a few days later which resembled the defendant. At the photographic lineup, the victim immediately identified the man. At the live lineup, she again identified the defendant even though his appearance was slightly different from the photograph. The photographic lineup was conducted a few days after the incident, while the victims' memory was still fresh. The live lineup was several months later, but she still quickly identified the same man.
As can be seen, even if the facial tatoo was visible at either lineup, its presence did not affect the reliability of the identification. This assignment of error is without merit.
*1079 ASSIGNMENT OF ERROR NO. 4:
In his fourth assignment of error, the appellant complains of the trial court's failure to grant a mistrial based on the court's reference to a question posed by the defense counsel as a "loaded question." During voir dire, the following statements were made:
Mr. Minor: I do want to ask this question. The purpose of the question I think you will understand after you think about it a minute. I ask that you listen carefully to the question. Mr. Adams, would you require the evidence to convince you of Mr. James' innocence whatever evidence presented, whether it's evidence presented by the State or evidence presented by both State and defense, would you require the evidence that's presented to convince you of Mr. James' innocence before you would be willing to find him guilty?
Mr. Adams: It is my understanding that he is innocent until proven guilty, correct?
Mr. Minor: That's the law.
Mr. Adams: And as such, the evidence presented by the attorney's office would have to be positive, reasonably positive in its conclusion.
Mr. Minor: Mr. Paxton, do you think you would require evidence to convince you of Mr. James' innocence before you would be willing to find him not guilty?
Mr. Paxton: Yeah.
The Court: Mr. Paxton, let's back up. I think really that's a loaded question, Mr. Minor.
The defendant claims that the characterization of his question as being "loaded" implied that counsel was trying to trick the jurors. This assignment of error is without merit.
Following the above cited exchange, counsel for the defense was allowed to explain the purpose of his question before the jury venire. Also, the trial judge stated that he felt he was a "little strong" in his language.
In light of the safeguards taken by the trial court in allowing the defense counsel to explain his question and the trial court's apology for the language used, we do not see that the defendant was prejudiced in any manner.
ASSIGNMENT OF ERROR NO. 5:
By this assignment of error, the appellant complains that the trial court erred in denying his motion for a new trial. The motion was entered on the basis that the verdicts were contrary to the law and the evidence. He states that there was insufficient evidence as to the identify and alternatively that the elements of the crime of aggravated rape were not proven.
The appellant contends first that the evidence did not prove that he was the person that committed the robbery. Appellant acknowledges that the victim identified him on two occasions, but contends that identification evidence cannot by itself support a conviction. The appellant cites U.S. v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), in support of the unreliability of identification evidence. While Wade discusses the inherent weaknesses in identification evidence, we do not find that it holds that such evidence alone will not support a conviction. Wade simply held that counsel should be a requisite to the conduct of a lineup and any in-court identification made after a lineup without counsel is suspect. In any event, the defendant's identification was not the only evidence linking him to the crime in this instance. The victim described and later identified the car to which the defendant had ready access. Also, despite the alibi witnesses that testified that the defendant was in California around the time of the crime, the state produced witnesses who testified the defendant was in Shreveport during the time of the offense. Under the Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) standard, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
The appellant's alternative argument is that the elements of the aggravated rape *1080 were not proven. At the time of the offense charged aggravated rape was defined in La.R.S. 14:42 as:
Aggravated rape is a rape committed where the anal or vaginal sexual intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
(1) Where the victim resists the act to the utmost, but whose resistence is overcome by force; or
(2) Where the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution; or
(3) Where the victim is under the age of 12 years. Lack of knowledge of the victim's age shall not be a defense.
Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. (The statute was amended after the date of this offense by Act 707 of 1981.)
The appellant contends that since the defendant put the pistol into the back seat, he was no longer armed and the act was forcible rape. La.R.S. 14:42.1.
The threat of receiving great bodily harm continued even after defendant placed the gun on the back seat. Testimony and evidence indicate that the car in which the rape occurred was damaged on the passenger's side door preventing its being opened. The only way out of the vehicle was through the driver's side. Defendant was in effective control over the victim because of her position in the car and his ready access to the pistol had she made an attempt to escape.
This assignment of error is meritless.
ASSIGNMENT OF ERROR NO. 6:
The sixth error assigned by the appellant is that of excessive sentence. The defendant was sentenced to two terms of life imprisonment for aggravated rape and aggravated kidnapping, and one term of 99 years of imprisonment for armed robbery. The sentences are to run consecutively. Since the two life sentences that were imposed were mandatory (R.S. 14:42; 14:44), the defendant specifically complains of the 99 year sentence and the consecutive nature of the sentences.
In sentencing the defendant to 99 years for hard labor, the trial court noted that this was the defendant's third conviction for armed robbery. He was therefore ineligible for parole. The court also stated that any lesser sentence would deprecate the seriousness of the offense. He also felt that a stringent sentence should be imposed in light of the number of robberies involving all night, single attendant convenience stores. In view of the defendant's previous record the imposition of the maximum sentence provided by law does not appear to be excessive. See State v. Curtis, 363 So.2d 1375 (La.1978); State v. Douglas, 389 So.2d 1263 (La.1980).
Louisiana C.Cr.P. Art. 883 provides in pertinent part:
If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the Court expressly directs that some or all shall be served consecutively.
The convictions in the instant case arose out of a single incident. The Louisiana Supreme Court, however, has never held a sentence to be excessive merely because consecutive sentences were imposed in convictions arising from a single incident. State v. Farria, 412 So.2d 577 (La.1982). The court has directed that other factors must be considered. These factors include the defendant's crime. See State v. Murdock, 416 So.2d 103 (La.1982). This is the defendant's third felony conviction and second conviction for armed robbery. The crime was one that could have resulted in serious physical injury to the victim. In light of these factors, the consecutive nature of sentences is not excessive. This assignment of error is meritless.
*1081 SUPPLEMENTAL ASSIGNMENT OF ERROR NO. 7:
By this assignment, the appellant complains of the trial court's refusal to grant a challenge for cause of a prospective juror causing him to use a peremptory challenge. The basis of the challenge was the relationship of the juror to two of the state's witnesses. One of the witnesses was a first cousin and the other was an acquaintance.
La.C.Cr.P. Art. 797 lists five grounds for a challenge for cause. The article reads:
The State or the defendant may challenge a juror for cause on the ground that:
(1) The juror lacks qualification required by law;
(2) The juror is not impartial, whatever the cause of his partiality. An opinion or impression as to the guilt or innocence of the defendant shall not of itself be sufficient ground of challenge to a juror, if he declares, and the Court is satisfied, that he can render an impartial verdict according to the law and the evidence;
(3) The relationship, whether by blood, marriage, employment, friendship, or enmity between the juror and the defendant, the person injured by the offense, the District Attorney, or defense counsel, is such that it is reasonable to conclude that it would influence the juror in arriving at a verdict;
(4) The juror will not accept the law as given to him by the Court; or
(5) The juror served on the Grand Jury that found the indictment, or on Petit Jury that once tried the defendant for the same or any other offense.
The appellant contends that due to the juror's relationship to both witnesses, it was unreasonable to conclude that the juror could have been impartial despite her assertions to the contrary. The appellant cites State v. McIntyre, 365 So.2d 1348 (La.1978) and State v. Monroe, 366 So.2d 1345 (La. 1978) in support of this proposition. These cases, however, involve a much clearer prejudicial relationship than in the instant case. The appellant has failed to show any abuse of discretion on the part of the trial court.
This assignment is without merit.
SUPPLEMENTAL ASSIGNMENT OF ERRORS NO. 15, 16, and 17:
By these assignments of error, the appellant complains of the trial court's failure to grant a mistrial after alleged other crimes evidence was presented. During the testimony of the States witness, Maxine Blount, the following statements were made:
Q. Did you try to get your car back?
A. Yes, sir, I asked him [the defendant] for it. I asked him for my car.
Q. When did you ask him for your car?
A. After the fight... (Vol. 4, Page 783)
* * * * * *
Q. Now, how long was that that you went to Legal Aid after he came on your job?
A. Uh, about the third day.
Q. The third day after he came on the job?
A. Yeah; because I wentI went to the policeman's station first. I didn't know what to call. (Vol. 4, Page 789)
After the first comment by the witness, counsel for the defense objected and moved for a mistrial on the grounds that the testimony tended to show that the defendant had unauthorized possession of the automobile. The motion was denied. After the second remark, the defendant objected and the Court overruled it. During the testimony of Officer D.E. Stevens, the following response was given:
Q. Do you notice any change in his (the defendant's) facial features?
A. Yes, sir, I noticed the change when I done another Court proceeding on him. (Vol. 4, Page 807)
The defendant objected, contending that this was impermissible inference to another crime. The court overruled the objection. It is the appellant's position that a mistrial was warranted due to the above remarks.
*1082 La.C.Cr.P. Art. 770 applies in instances in which the witness makes mention of the defendant's past criminal behavior. That article does not demand that a mistrial be granted in such instances. It merely provides that a mistrial may be granted if the court is "satisfied that an admonition is not sufficient to assure the defendant a fair trial."
In the instant case, the remarks only hint at the defendant's prior misconduct. It is not shown that they prejudiced his right to a fair trial. Even if the remarks were more prejudicial, under C.Cr.P. Art. 771, all the defendant would be entitled to would be an admonition.
These assignments of error are meritless.
SUPPLEMENTAL ASSIGNMENT OF ERROR NO. 18:
During the defendant's cross-examination of Detective D.E. Stevens, the judge interrupted with the following comments:
"The Court: Just a minute. Now this is repetitive, and I am ruling it out. Let's get about to dismiss this witness." (Vol. 4, Page 817)
The trial court judge is given wide discretion in limiting cross-examination when that cross-examination tends to be repetitive. The remark made by the trial court in the instant case came toward the end of the trial. The court had indicated its wish to speed things along. He warned both the prosecution and the defense not to be repetitive. Counsel for the defense was going into matters that had been previously discussed by several witnesses and the prosecution. It was clear that his questions were repetitive, and the trial court did not err in disallowing them. This assignment of error is without merit.
For the foregoing reasons, the convictions and sentences appealed are affirmed.