SCHOTT, Judge.
Defendant was convicted of aggravated rape (R.S. 14:42) and aggravated kidnapping (R.S. 14:44) and sentenced to life imprisonment on each count. We have examined the record for errors patent and find none. Defendant assigns error in the trial court’s denial of his motions for post verdict judgment of acquittal and for a new trial which were both grounded on arguments of insufficiency of evidence to support the convictions.
On August 25, 1984, the victim, Debra, was at the home of her friend, Dianne, with a group of people playing cards. She left with Leonard and he drove to Audubon Park where they parked. A police patrol car pulled up behind them. It was driven by defendant and occupied by passengers Jackson and Hutchins. Defendant and Jackson were in police uniforms; Hutchins was in a jogging suit. Debra, Leonard, Jackson and defendant gave different versions of what transpired.
Debra’s version: She and Leonard were talking in the parked car when the police came up and orderd them out of Leonard’s car. Defendant took Leonard to the front of the car and left Debra with the others in *572 the back of the car. After some conversation with defendant, Leonard left in his car and defendant told Debra they would bring her home. Instead, they drove her to a nearby levee with defendant driving, Jackson in the front seat, and Hutchins in the rear with Debra. She became frightened and began to cry. The three men got out and and she tried to get out but could not open the door. After they talked for a few minutes they opened the door and ordered her to get out. Her testimony continued as follows:
Q. What happened after that?
A. I stood up out of the car. And when I stood up I was still crying and stuff. They told me to shut up. I said, “Why are we here? Because this is not where I stay at. You know what is going to happen so stop crying and just let it happen.” At that time I said, “Well, whatever you all want to do to me just go ahead on and do it and don’t hurt me and let me go, bring me home.”
Q. Why did you say that Debra?
A Because I was afraid?
Q Why were you afraid?
A. Because they had their guns and pistols and they were talking to be rough.
Q. How were they talking to you?
A. Like Bitch, shut up crying because if it was a white boy you wouldn’t be crying. They would kill your fucking head.
Q. Who said that?
A. That man over there.
Q. Who was first, Debra?
A. He was.
Q. And what did he do?
A. He told me to stand up and pull my underclothes, pull my dress up and my drawers down. I didn’t want to. So he pulled it up an pulled my underclothes off and told me to lay back on the seat.
Debra testified that each man, defendant, then Jackson, then Hutchins, in turn, raped her; before defendant did so he removed his weapon from his waist and handed it to Jackson, and Jackson, before raping her, handed his weapon to defendant. Afterwards, they brought her to an intersection some distance away and put her out of the car.
According to Leonard he prevailed on the officers to let him go and he was told that they would take Debra to her car.
■ Jackson’s version: He was on duty in a patrol car driven by defendant on the night of August 25. Hutchins, not a policeman but a friend of defendant, was along for the ride in the back seat. They stopped where Leonard’s car was parked, defendant spoke to Leonard for a few minutes, and Leonard drove off leaving Debra with the three. Jackson was told by defendant that he was bringing Debra to her home. Instead he drove to a nearby area called Riverbend. In his own words they each “raped” the victim in the back seat of the partrol car. When he and defendant did so the other held his gun. While this occurred the victim was crying and shaking.
Defendant testified that Leonard and Debra were engaged in sexual intercourse in Leonard’s car when they pulled up in the police car. He allowed Leonard to leave and intended to take Debra home when she voluntarily had intercourse with each man.
In this court defendant argues that the evidence was insufficient to convict him of rape because there was no evidence of resistance on Debra’s part and no testimony of any threats against her; that while weapons were present they were not used against her and were not on the person of the defendant, when he had intercourse with her.
At the time of the offense R.S. 14:42 defined rape as non-consensual intercourse under any of three circumstances including:
“(2) Where the victim is prevented from resisting the act by threats of great and immediate bodily harm, accompanied by apparent power of execution....”
From Debra’s testimony, particularly the portion quoted above, she was placed in fear and threatened by defendant and his colleagues who she knew were carrying *573 weapons and their conduct prevented her from resisting their advances on her. We are not impressed with the argument that defendant lacked the power of execution of his threats when he handed his weapon to Jackson before the rape. As in State v. James, 431 So.2d 1075 (La.App.2d Cir.1983), writ den. 439 So.2d 1076 (La.1983) he retained control over the victim and had ready access to the gun at all times.
Defendant also argues that the evidence was insufficient to support the crime of aggravated kidnapping. R.S. 14:44 defines this crime to be the enticing of a person to go from one place to another with the intent of forcing the victim to give up something of apparent value in order to secure the victim’s release. Here Debra was enticed into the police car and transported therein on the promise they would take her to her car or home. The thing of value she was forced to give up was the sexual gratification of defendant and his colleagues. State v. Washington, 482 So.2d 118 (La.App. 4th Cir.1986). That her cooperation was a condition of securing her release is obvious from Debra’s testimony that “You know what is going to happen so stop crying and just let it happen” coupled with the fact that they let her go after they ravished her.
When the evidence is viewed in the light most favorable to the prosecution, it is sufficient for a rational juror to have concluded that the essential elements of both crimes were proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
The convictions and sentence are affirmed.
AFFIRMED